UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

NATALIA MAZZUCHELLI,

                Plaintiff,

      -against-

IMMUTABLE PTY. LTD and
LIGHTSOURCE GLOBAL,

              Defendants.

------------------------------------------------------ X

CASE NO. 1:23-cv-07885-NSR

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
IMMUTABLE PTY. LTD'S MOTION TO DISMISS OR STRIKE
PORTIONS OF THE FIRST AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 12(F)**

William J. Anthony
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719

# TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT ............................................................................ 1

II.   RELEVANT FACTUAL ALLEGATIONS ........................................................ 3

III.  ARGUMENT .................................................................................................... 4

  A.    Applicable Legal Standards. ..................................................................... 4

  B.    The NYHRL Does Not Apply to Plaintiff's Sexual Harassment Claim. ........................ 5

  C.    Plaintiff's Allegations of Sexual Harassment Also Fail to State a Claim. ...................... 6

    1.    Plaintiff's allegations fail to establish harassment based on a discriminatory
          motive under Title VII and the NYHRL. ........................................................... 6

    2.    Plaintiff's allegations amount to petty slights and trivial inconveniences that do
          not state a claim under Title VII and the NYHRL. ............................................. 8

  D.    The Court Should Dismiss Plaintiff's Claims under the FEHA. ................................... 11

    1.    Plaintiff's sexual harassment claim fails under the FEHA for the same reasons
          that it fails under Title VII and the NYHRL. .................................................... 11

    2.    The FEHA does not apply to Plaintiff's claims of pregnancy-based
          discrimination and retaliation. ...................................................................... 13

  E.    In the Alternative, The Court Should Strike the Impertinent and Scandalous Allegations
        from the First Amended Complaint. ............................................................... 14

IV.  CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................4

*Ayala v. Frito Lay, Inc.,*
    263 F. Supp. 3d 891 (E.D. Cal. 2017)...........................................................11

*Beckett v. Prudential Ins. Co.,*
    893 F. Supp. 234 (S.D.N.Y. 1995)..................................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................4

*Blakely v. Lew,*
    607 F. Appx. 15 (2d Cir. 2015).....................................................................13

*Bray v. Purple Eagle Ent., Inc.,*
    2019 WL 1549044 (S.D.N.Y. Jan. 18, 2019), *report and recommendation*
    *adopted*, 2019 WL 549137 (S.D.N.Y. Feb. 12, 2019)...........................16, 17

*Campbell v. Arco Marine, Inc.,*
    42 Cal.App.4th 1850 (1996) .....................................................................11, 13

*Clark Cnty. Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001)......................................................................................10

*Curto v. Med. World Communs., Inc.,*
    388 F. Supp. 2d 101 (E.D.N.Y. 2005) ...........................................................5

*Davis-Bell v. Columbia University,*
    851 F. Supp. 2d 650 (S.D.N.Y. 2012).............................................................8

*Erasmus v. Deutsche Bank Ams. Holding Corp.,*
    2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015).................................................8

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998)......................................................................................10

*Goldstein v. Pataki,*
    516 F.3d 50 (2d Cir. 2008).............................................................................4

*Hammell v. Banque Paribas,*
    780 F. Supp. 196 (S.D.N.Y. 1991).................................................................5

*King v. Aramark Servs. Inc.*,
2024 WL 1188985 (2d Cir. Mar. 20, 2024).................................................................5

*Loza v. Intel Americas, Inc.*,
2020 WL 7625480 (N.D. Cal. Dec. 22, 2020)..........................................................14

*Lyle v. Warner Bros. Television Prods.*,
38 Cal. 4th 264 (2006) ...............................................................................................12

*Mitchell v. Macy's, Inc.*,
2018 WL 9918137 (S.D.N.Y. Sept. 25, 2018)............................................................9

*Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*,
2022 WL 524551 (S.D.N.Y. Feb. 22, 2022)...............................................................8

*Nachmany v. FXCM, Inc.*,
2020 WL 178413 (S.D.N.Y. Jan. 9, 2020) ...........................................................14, 15

*O'Dell v. Trans World Ent. Corp.*,
153 F. Supp. 2d 378 (S.D.N.Y. 2001), *aff'd*, 40 F. Appx. 628 (2d Cir. 2002).........10

*Paparella v. Plume Design, Inc.*,
2022 WL 2915706 (N.D. Cal. July 25, 2022)...........................................................14

*Prince v. Cablevision Sys. Corp.*,
2005 WL 1060373 (S.D.N.Y. May 6, 2005) .............................................................10

*Racker v. St. Bonaventure Univ.*,
No. 04-CV-00125C, 2005 WL 1522797 (W.D.N.Y. June 28, 2005) .........................5

*Regan v. Benchmark Co. LLC*,
No. 11 CIV. 4511 (CM,) 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012) ......................5

*Salas v. United Airlines, Inc.*,
2023 WL 2744389 (N.D. Cal. Mar. 31, 2023).........................................................11

*Tufano v. One Toms Point Lane Corp.*,
64 F. Supp. 2d 119 (E.D.N.Y. 1999), *aff'd*, 229 F.3d 1136 (2d. Cir. 2000).............7

*Yost v. Everyrealm, Inc.*,
657 F. Supp. 3d 563 (S.D.N.Y. 2023)............................................................... *passim*

## Statutes

N.Y. Exec. Law § 296(1)(h) ..........................................................................................8

## Other Authorities

2 CCR § 11008(d)(1)(C)...............................................................................................13

Fed. R. Civ. P. 12(f)..................................................................................................14

*NY tech boss stripped down in front of female employee, tried to groomed [sic] her: suit*, Kathianne Boniello, New York Post, September 16, 2023, available at http://nypost.com/2023/09/16/female-boss-inundated-ny-woman-with-graphic-sex-talk-suit/ ....................................................................................16

5A Wright, Miller & Marcus, *Fed. Prac. & Proc.: Civil 2d* § 1382, at 714 (West 1994 & Supp. 2001)..........................................................................................14

Defendant, Immutable PTY. LTD ("Immutable" or "Defendant"), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss or Strike Portions of the First Amended Complaint filed by Plaintiff Natalia Mazzuchelli ("Plaintiff") on March 14, 2024 [CM/ECF Doc. No. 38] pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f).

A copy of the First Amended Complaint is included as **Exhibit A** to the Declaration of William J. Anthony, Esq., dated April 24, 2024 ("Anthony Decl."). A redacted version of the First Amended Complaint with the allegations that Immutable submits should be stricken eliminated therefrom is included as **Exhibit B** to the Anthony Decl.

## I.    PRELIMINARY STATEMENT

The bulk of the First Amended Complaint illustrates a graphic (false) narrative of sexually nefarious conversations that are completely detached from the legal claims alleged. Indeed, *nearly half of the Complaint's factual allegations are graphic descriptions of alleged conversations about the sex lives of current and former Immutable executives*, most of whom are not otherwise alleged to have played any role in Plaintiff's employment or termination.

Plaintiff alleges claims of pregnancy discrimination, sexual harassment, and retaliation under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the California Fair Employment & Housing Act, Cal. Gov. Code §§ 12940 *et seq.* ("FEHA") and the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.* ("NYSHRL"). Plaintiff's sexual harassment allegations, however, are largely just inflammatory rhetoric devoid of any factual substance. Setting aside the inflammatory rhetoric and reviewing just Plaintiff's *factual* allegations alone, her purported sexual harassment claims must be dismissed.

As an initial matter, Plaintiff cannot state a claim of sexual harassment under the NYHRL because the NYHRL does not provide a cause of action to New York residents for discriminatory acts committed outside of New York by a foreign corporation. It is undisputed that Immutable is

1

a foreign entity, and there are no allegations in the First Amended Complaint of any purported sexual harassment occurring in New York. Rather, the three alleged instances of purported sexual harassment occurred in San Francisco, on a flight to Los Angeles, and in Australia. Therefore, the NYHRL does not extend to Plaintiff's claims of sexual harassment.

Plaintiff's factual allegations likewise do not set forth a viable claim of sexual harassment under Title VII, the NYHRL, or the FEHA because Plaintiff's sole *factual* allegations are that her supervisor – on *three* occasions – openly discussed her and others' sex lives and asked Plaintiff if she should get a "boob job" while changing out of clothes that Plaintiff loaned to her. Plaintiff offers nothing but inflammatory rhetoric linking the alleged sex talk to her *sex* and therefore does not set forth an actionable sexual harassment claim.

Should the Court disagree that Plaintiff's allegations fail to state a claim of sexual harassment, Plaintiff's legally insignificant allegations concerning the sexual preferences and sex lives of Immutable's executives are still nothing more than scandalous and inflammatory rhetoric that is wholly impertinent to the claims at issue, extremely prejudicial to Immutable and certain of the individuals mentioned in the First Amended Complaint, and clearly meant only to shock and incite its audience to Immutable's detriment. Thus, in the alternative, under Rule 12(f) – which allows the Court to "strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter" – the Court should strike such allegations from the First Amended Complaint as shown in **Exhibit B** to the Anthony Decl.

In sum, the Court should dismiss Plaintiff's sexual harassment claims or, in the alternative, the Court should strike the impertinent and scandalous paragraphs and allegations from the First Amended Complaint as shown in **Exhibit B** to the Anthony Decl.

## II.    RELEVANT FACTUAL ALLEGATIONS

Immutable categorically denies the allegations in the First Amended Complaint. The relevant factual allegations are discussed herein solely for purposes of Immutable's motion.

Plaintiff's allegations of sexual harassment are that on just *three* occasions all outside of New York her supervisor, Shirley Anderson, purportedly "inundated" her with graphic discussions about her own sex life and sexual preferences, and the sex lives and preferences of certain Immutable executives. Am. Coml. ¶ 1. The three alleged incidents of harassment all occurred outside of New York, (i) in San Francisco (*id.* at ¶ 26); (ii) on a flight to Los Angeles (*id.* at ¶ 42); and (iii) in Australia (*id.* at ¶ 45).

Specifically, Plaintiff alleges that on September 29, 2022, and September 30, 2022, during a work trip to San Francisco, Anderson spoke to Plaintiff in detail about her own sex life and sexual preferences. Am. Compl. ¶¶ 26-30. Plaintiff also allowed Anderson to borrow some "going out clothes" for a night out and then, while Anderson was changing back into her own clothes, she asked Plaintiff if she should get a "boob job." *Id.* at ¶¶ 32-38.

Plaintiff next alleges that, on October 2, 2022, on a flight to Los Angeles, Anderson told Plaintiff about an alleged affair with an Immutable client. *Id.* at ¶¶ 42-43.

Lastly, Plaintiff alleges that, in mid-March 2023, while in Australia, Anderson again discussed her own sex life and discussed the sex lives of certain Immutable executives. *Id.* at ¶¶ 45-48. Plaintiff did not ever complain about this alleged sexual harassment during her employment with Immutable. *Id.* at ¶¶ 60-61.

While Plaintiff tries to claim that Anderson was trying to groom her into a sexual encounter (*id.* at ¶¶ 1, 29, 35), this claim is solely based on inflammatory rhetoric as opposed to fact. There are *no* factual allegations which plausibly support the conclusion that Anderson was in any way trying to groom Plaintiff into a sexual relationship. Indeed, there are no allegations that Anderson

propositioned Plaintiff for sex, had physical contact with Plaintiff, or made any attempt to coerce or solicit Plaintiff into a sexual encounter. Plaintiff's sole *factual* allegations are that Anderson on three occasions openly discussed her and others' sex lives and asked Plaintiff if she should get a "boob job" while changing out of clothes that Plaintiff loaned to her.

Plaintiff also alleges that, on April 5, 2023, she disclosed to Anderson that she was pregnant and, that same day, received a negative performance review. Am. Compl. ¶¶ 52, 58. On April 21, 2023, Plaintiff complained – not about any alleged sexual harassment – but "about Anderson's discriminatory comments regarding whether [Plaintiff] could perform her role while pregnant and her negative performance review." *Id.* at ¶¶ 60-61. Plaintiff claims she was then terminated from her employment on May 1, 2023. *Id.* at ¶ 65.

## III.    ARGUMENT

### A.    Applicable Legal Standards.

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A]t a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (quotations and citations omitted)); *see also Twombly*, 550 U.S. at 555 (the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level.").

While a complaint need not allege specific facts to establish each *prima facie* element of discrimination to survive a Rule 12(b)(6) motion, courts routinely use *prima facie* standards as "a

measure of legal feasibility." *Racker v. St. Bonaventure Univ.*, No. 04-CV-00125C, 2005 WL 1522797, at *4 (W.D.N.Y. June 28, 2005) (internal quotations and citation omitted). "[A] complaint containing factual allegations that preclude the existence of any element of a *prima facie* case cannot possibly raise a claim that is 'facially plausible.'" *Regan v. Benchmark Co. LLC*, No. 11 CIV. 4511 (CM,) 2012 WL 692056, at *9 (S.D.N.Y. Mar. 1, 2012).

Here, as explained below, the Court should dismiss the First Amended Complaint because it fails to meet these basic pleading standards.

**B.    The NYHRL Does Not Apply to Plaintiff's Sexual Harassment Claim.**

The Second Circuit recently confirmed that the NYHRL does not apply to unlawful acts committed by foreign defendants outside of New York – even as against New York residents. *See King v. Aramark Servs. Inc.*, 2024 WL 1188985, at *6-7 (2d Cir. Mar. 20, 2024). Therefore, the Court should dismiss Plaintiff's claim alleging sexual harassment under the NYHRL because Immutable is a foreign entity and there are no allegations of any purported sexual harassment occurring in New York.

This is in line with the many District courts that have interpreted the NYHRL as not providing "a cause of action to a New York resident for discriminatory acts committed outside of New York by a foreign corporation." *Curto v. Med. World Communs., Inc.*, 388 F. Supp. 2d 101, 106 (E.D.N.Y. 2005); *Hammell v. Banque Paribas*, 780 F. Supp. 196, 199 (S.D.N.Y. 1991) ("Although N.Y. Exec. L. § 298-a permits a New York resident to sue a domestic corporation for discriminatory acts committed outside New York, it does not provide a private civil cause of action to New York residents discriminated against out of state by a foreign corporation."); *Beckett v. Prudential Ins. Co.*, 893 F. Supp. 234, 238 (S.D.N.Y. 1995) ("[T]he NYHRL does not provide a cause of action to a *New York* resident for discriminatory acts committed *outside* of New York by a *foreign* corporation.") (emphasis in original).

Here, it is undisputed that Immutable is a foreign entity. It is an Australian corporation with its principal place of business in Australia. Am. Compl ¶ 12. Anderson, the alleged harasser, is likewise a resident of Australia. *Id*. All the alleged acts that comprise Plaintiff's sexual harassment claim occurred in California and Australia. *Id*. at ¶¶ 26, 42, 45. Specifically, the three alleged instances of harassment occurred (i) in San Francisco (*id*. at ¶ 26); (ii) on a flight to Los Angeles (*id*. at ¶ 42); and (iii) in Australia (*id*. at ¶ 45). As such, Plaintiff cannot maintain a claim of sexual harassment under the NYHRL against Immutable.

Therefore, because the reach of the NYHRL does not extend to Plaintiff's claims of sexual harassment, the Court should dismiss Plaintiff's sexual harassment claim under the NYHRL.

**C.    Plaintiff's Allegations of Sexual Harassment Also Fail to State a Claim.**

**1.    Plaintiff's allegations fail to establish harassment based on a discriminatory motive under Title VII and the NYHRL.**

This Court recently held in *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 570-71, 580-81 (S.D.N.Y. 2023) (Engelmayer, P.) that allegations concerning conversations about sex and the sexual activities and orientations of others do not give rise to a plausible claim of sexual harassment under Title VII or the NYHRL because such conduct is not tied to a protected characteristic. That is precisely why Plaintiff's claims fail here.

Plaintiff alleges that on *three* occasions, Anderson "inundated" her with stories about her own sex life, and the sex lives of Immutable executives. Am. Compl. ¶ 1.

While Plaintiff tries to paint a picture that this was all in an effort to "groom" her into a sexual encounter, there are *no* factual allegations which plausibly support the conclusion that Anderson was in any way trying to groom Plaintiff. Plaintiff's allegations are nothing more than inflammatory conjecture trying to turn Anderson's purported generalized discussions about her and others' sex lives into a viable sexual harassment claim. Yet, where a plaintiff alleges violations

of a civil rights statute, the allegations in the complaint must contain specific violations and not

merely "'a litany of general conclusions that shock but have no meaning.'" *Tufano v. One Toms*

*Point Lane Corp.*, 64 F. Supp. 2d 119, 123 (E.D.N.Y. 1999), *aff'd*, 229 F.3d 1136 (2d. Cir. 2000)

(quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).

 In *Yost*, like here, the plaintiff alleged that her same-sex supervisor made "a handful of

comments relating to sex." *Yost*, 657 F. Supp. 3d at 580-81. The plaintiff's supervisor asked the

plaintiff's opinion about whether a senior executive was "in the closet" and told her that a

cofounder was a "virgin" and "asexual or bisexual" because of his disinterest in "pretty girls." *Id.*

She also "frequently discussed her theories about the sexuality of other…employees in the office."

*Id.* at 570. She discussed asking a male coworker whether he was late "because he had 'hooked

up' with a woman whom [she] referred to as 'Dog in Bag.'" *Id.* at 571. She spoke about employees

sleeping together and repeated a coworker's statement that "balls will be in [his or her] mouth by

the end of the night." *Id.* at 581.

 The *Yost* Court acknowledged that the plaintiff's supervisor presented "as a full-spectrum

and unfiltered purveyor of gossip, with a special obsession with matters of sex and intimacy" but

nonetheless held that the plaintiff's complaint did not supply any basis besides conjecture to link

the sex talk to the plaintiff's sexual orientation. *Yost*, 657 F. Supp. 3d at 582.

 Similarly, here, the First Amended Complaint offers nothing but inflammatory conjecture

linking Anderson's purported sex talk to Plaintiff's *sex*. Plaintiff tries to paint the picture that

Anderson's was trying to groom her into a sexual encounter (*id.* at ¶¶ 1, 29, 35), but offers no

*factual* allegations to support her inflammatory rhetoric. Indeed, there are *no* factual allegations

which plausibly support the conclusion that Anderson was in any way trying to groom Plaintiff

into a sexual relationship. There are no allegations that Anderson propositioned Plaintiff for sex,

had physical contact with Plaintiff, or made any attempt to coerce or solicit Plaintiff into a sexual relationship. Plaintiff's sole *factual* allegations are that Anderson – on three occasions – openly discussed her and others' sex lives and asked Plaintiff if she should get a "boob job" while changing out of clothes that Plaintiff loaned to her. *See generally*, *id*. It is unclear how this was in any away an attempt by Anderson to lure Plaintiff into a sexual encounter.

It is well-settled under Title VII and the NYSHRL that "generalized hostility or generally uncivilized behavior is not actionable." *Yost*, 657 F. Supp. 3d at 580. Anderson's handful of alleged sexual discussions – while crude – are totally disconnected from any protected characteristic of Plaintiff's. As such, the Court should dismiss Plaintiff's sexual harassment claims.

> **2.    Plaintiff's allegations amount to petty slights and trivial inconveniences that do not state a claim under Title VII and the NYHRL.**

Plaintiff's allegations are likewise petty slights and trivial inconveniences that do not establish a claim of sexual harassment, whether under the NYHRL or Title VII.

To state a claim of sexual harassment under the NYHRL, Plaintiff must allege that she was "subjected to 'inferior terms, conditions or privileges of employment because of [her] membership in one or more ... protected categories.'" *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (quoting N.Y. Exec. L. § 300). However, it is well-established that the NYHRL does not constitute a "general civility code." *Davis-Bell v. Columbia University*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012). "[P]etty slights and trivial inconveniences" are not actionable under the NYHRL. *Yost*, 657 F. Supp. 3d at 579. *See also* N.Y. Exec. Law § 296(1)(h).

Courts have dismissed harassment claims under the NYHRL with allegations far more serious than those present here. *See, e.g., Erasmus v. Deutsche Bank Ams. Holding Corp.*, 2015 WL 7736554, at *6 (S.D.N.Y. Nov. 30, 2015) (stating that it had "substantial doubts" about

whether a series of "sexual gestures and advances toward [plaintiff]," including "leer[ing] at [plaintiff] in a sexual manner," commenting to plaintiff that he was "having so much sex all the time," advising plaintiff, "To get into a nightclub just put a sock in your pants and pretend like you have a really big dick," then motioning to plaintiff and "pointing to his penis," on several occasions, "pretend[ing] to hold his penis while pointing it at [plaintiff] and making "inappropriate sexual comments to [plaintiff]" could give rise to a harassment claim); *Mitchell v. Macy's, Inc.*, 2018 WL 9918137, at *4 (S.D.N.Y. Sept. 25, 2018) (granting motion to dismiss sexual harassment claims where the defendant allegedly "exposed her bare breasts to [him] on the sales floor" three times, noting there is no indication the plaintiff "suffered any differential treatment").

Here, Plaintiff describes three instances where she was allegedly made uncomfortable by Anderson's discussions of her and others' sex lives. There are no allegations that Anderson propositioned Plaintiff for sex, had physical contact with Plaintiff, or made any attempt to coerce or solicit Plaintiff into a sexual relationship. Setting aside Plaintiff's rhetoric and conjecture, Plaintiff's allegations are simply that Anderson on just *three* occasions all outside of New York discussed her and others' sex lives and asked Plaintiff if she should get a "boob job" while changing out of clothes that Plaintiff loaned to her. This does not rise above the sort of petty slights and trivial inconveniences that are not actionable under the NYHRL such that the Court should dismiss Plaintiff's sexual harassment claim.

Plaintiff's failure to assert an actionable claim of sexual harassment is even more striking under Title VII. To establish a hostile work environment under Title VII requires a showing of "'severe and pervasive' conduct." *Yost*, 657 F. Supp. 3d at 578 (quoting *Williams v. N.Y.C. Hous. Auth., et al.*, 61 F.4th 55, 68–69 (2d Cir. 2023)). Plaintiff does not even remotely allege conduct that would be, "so severe or pervasive as to alter the conditions of her employment and create an

abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (internal quotations and alterations omitted); *See also, e.g., Prince v. Cablevision Sys. Corp.*, 2005 WL 1060373, at *2, 6-7 (S.D.N.Y. May 6, 2005) (dismissing a hostile work environment claim where an employee was subjected to "sex talk," and where a co-worker attempted to kiss the plaintiff and asked her to have sex with him); *O'Dell v. Trans World Ent. Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001) (no hostile work environment where alleged harasser, while acting both as plaintiff's co-employee and her supervisor, "repeatedly asked her out ... made comments about her appearance, sent her e-mails professing his love for her, called her at work and at home, invited her to tour New York City with him, gave her three gifts, and played her a song that she found offensive"), *aff'd*, 40 F. Appx. 628 (2d Cir. 2002).

In other words, Plaintiff's allegations fall well short of establishing severe and pervasive sexual harassment under Title VII.[1]

In sum, Plaintiff's allegations fail to state a claim of sexual harassment under Title VII or the NYHRL as a matter of law. Therefore, the Court should dismiss Plaintiff's claims alleging sexual harassment under Title VII and the NYHRL.

---

[1] Even if the conduct alleged could support a sexual harassment claim under Title VII (which it cannot), the First Amended Complaint still fails because the Immutable can avail itself of the *Faragher* defense. Immutable is entitled to an affirmative defense if it "exercised reasonable care to prevent and correct promptly any harassing behavior" and Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Immutable] or to avoid harm otherwise." *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998). Plaintiff did not complain about sexual harassment during her employment with Immutable. Rather, according to the First Amended Complaint, Plaintiff complained about "Anderson's discriminatory comments regarding whether [Plaintiff] could perform her role while pregnant and her negative performance review." Am. Compl. ¶ 61. Thus, Plaintiff "unreasonably failed to take advantage of [Immutable's] preventive [and] corrective opportunities … [and] to avoid harm otherwise." *Faragher,* 524 U.S. at 807. Accordingly, even if any purported sexual harassment did occur (which, as discussed herein, it did not), Immutable cannot be held liable.

**D.      The Court Should Dismiss Plaintiff's Claims under the FEHA.**

**1.      Plaintiff's sexual harassment claim fails under the FEHA for the same reasons that it fails under Title VII and the NYHRL.**

As a preliminary matter, as discussed in Point IV.B, *infra*, the FEHA does not apply to non-residents where the alleged tortious conduct took place outside of California. *Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th 1850, 1852 (1996). Plaintiff is a resident of New York, not California. Am. Compl. ¶ 11. Plaintiff's allegations concerning Anderson's alleged sex talk while in *Australia* (*id.* at ¶ 45), therefore, do not state a claim under the FEHA.

Accordingly, Plaintiff is left alleging *two* incidents of purported sexual harassment wherein Anderson (i) spoke to Plaintiff in detail about her own sex life and sexual preferences and asked Plaintiff if she should get a "boob job" while changing out of the clothes Plaintiff loaned her for a night out, and (ii) told Plaintiff about her alleged affair with an Immutable client.

"To prevail on a harassment claim under FEHA, a plaintiff must prove that she was subjected to harassment because of a protected characteristic and that the harassment was so severe that it created a hostile work environment." *Salas v. United Airlines, Inc.*, 2023 WL 2744389, at *6 (N.D. Cal. Mar. 31, 2023) (citation omitted). "To rise to the level of harassment, the conduct must be 'sufficiently severe or pervasive' so as to 'alter the conditions of employment and create an abusive working environment.'" *Id.* (quotation omitted). "'To meet this standard, plaintiff must be "subjected to sexual advances, conduct, or comments that were severe enough, or sufficiently pervasive to alter the conditions of her employment.'" *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 909–10 (E.D. Cal. 2017) (quotation omitted).

As discussed in detail in Points II and III, *supra*, Plaintiff does not allege that she was subjected to unwelcome verbal or physical conduct that was severe or pervasive, or that she was subjected to any such conduct *because of* her sex.

"It is the disparate treatment of an employee on the basis of sex—not the mere discussion of sex or use of vulgar language—that is the essence of a sexual harassment claim. *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 280 (2006). As discussed in Point III.A, *supra*, Plaintiff offers nothing but inflammatory conjecture linking Anderson's purported sex talk to Plaintiff's *sex*. There are no allegations that Anderson propositioned Plaintiff for sex, had physical contact with Plaintiff, or made any attempt to coerce or solicit Plaintiff into a sexual relationship. Setting aside Plaintiff's inflammatory rhetoric and conjecture, Plaintiff's allegations are that Anderson discussed her sex life with Plaintiff and asked Plaintiff if she should get a "boob job." Plaintiff's allegations fall well short of establishing unlawful sexual harassment.

Moreover, "to establish liability in a FEHA hostile work environment sexual harassment case, a plaintiff employee must show she was subjected to sexual advances, conduct, or comments that were *severe enough or sufficiently pervasive to alter the conditions of her employment and create a hostile or abusive work environment. Lyle v*, 38 Cal. 4th at 283 (emphasis in original). "With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Id.* at 283. "That is, when the harassing conduct is not severe in the extreme, more than a few isolated incidents must have occurred to prove a claim based on working conditions." *Id.*

The facts alleged are insufficient to establish severe enough or sufficiently pervasive conduct to be actionable. The *two* isolated instances of alleged harassment by Anderson are neither

severe nor pervasive. Therefore, the Court should also dismiss Plaintiff's claims alleging sexual

harassment under the FEHA.[2]

### 2. The FEHA does not apply to Plaintiff's claims of pregnancy-based discrimination and retaliation.

The FEHA's regulations provide that: "employees located outside of California are not

themselves covered by the protections of the Act if the allegedly unlawful conduct did not occur

in California, or the allegedly unlawful conduct was not ratified by decision makers or participants

in unlawful conduct located in California." 2 CCR § 11008(d)(1)(C). The California Court of

Appeal has also made clear that the FEHA "was not intended to apply to non-residents where ...

the tortious conduct took place out of this state's territorial boundaries." *Campbell,* 42 Cal.App.4th

at 1852.

Here, there are no allegations (nor can Plaintiff make any allegations) of tortious conduct

relating to Plaintiff's termination in California. In the absence of any allegation showing a nexus

between California and Plaintiff's termination, Plaintiff – who at all times worked and resided in

New York – cannot invoke the protections of the FEHA.

At all relevant times, Plaintiff lived and worked in New York. Am. Compl. ¶ 11. Immutable

is an Australian company. *Id.* at ¶ 12. It is neither headquartered in nor is it alleged to have a place

of business in California. *Id.* None of the individuals who participated in the termination decision

---

[2] Given that Plaintiff's sexual harassment claims under Title VII and the NYHRL are subject to dismissal, Plaintiff's claim under the FEHA is also subject to dismissal for improper venue under Rule 12(b)(3). Venue is governed by 28 U.S.C. § 1391(e), which provides that venue is only appropriate where: (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. *See also Blakely v. Lew*, 607 F. Appx. 15, 17 (2d Cir. 2015) ("In performing this analysis, courts must take seriously the adjective substantial and construe venue statute strictly" (internal quotation marks and citation omitted)). Plaintiff is the only party residing in New York, and no events giving rise to Plaintiff's sexual harassment claim occurred in New York such that venue is not appropriate as to her sexual harassment claims under the FEHA.

are alleged to have been (and were not) operating out of California.

Accordingly, Plaintiff's claims of pregnancy-based discrimination and retaliation under the FEHA "must be dismissed pursuant to the presumption against extraterritoriality." *Loza v. Intel Americas, Inc.*, 2020 WL 7625480, at *4 (N.D. Cal. Dec. 22, 2020) (citing *Campbell*, 42 Cal.App.4th at 1852); *see also Paparella v. Plume Design, Inc.*, 2022 WL 2915706, at *4 (N.D. Cal. July 25, 2022) (dismissing FEHA claims where the plaintiff failed to allege that he was employed in California or that the discriminatory conduct occurred in California).

### E.    In the Alternative, The Court Should Strike the Impertinent and Scandalous Allegations from the First Amended Complaint.

If the Court is inclined to allow Plaintiff's sexual harassment claims to proceed, it should still strike the impertinent and scandalous allegations concerning the sexual preferences and sex lives of Immutable's executives and client as set forth in **Exhibit B** to the Anthony Decl.

Rule 12(f) authorizes the Court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f).

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues.'" *Nachmany v. FXCM, Inc.*, 2020 WL 178413, at *8 (S.D.N.Y. Jan. 9, 2020) (Batts, D.) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F.Supp.2d 434, 437 (S.D.N.Y.2005)).

"'A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court.'" *Id.* (quoting *Cabbie v. Rollieson*, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006)). "[S]candalous allegations ... will often be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations." 5A Wright, Miller & Marcus, *Fed. Prac. & Proc.: Civil 2d* § 1382,

at 714 (West 1994 & Supp. 2001). "Materials will also be stricken if they 'serve no purpose except to inflame the reader.'" *Nachmany*, 2020 WL 178413, at *8 (quoting *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991)).

Finally, although not generally favored, motions to strike are granted where, as here, "'the allegations challenged have no real bearing on the subject matter or are likely to prejudice the movant.'" *Id.* (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F. Supp. 1226, 1241-42 (S.D.N.Y. 1995)). "Rule 12(f) motions are left to the Court's discretion." *Id.* at *20 (citing *Morse*, 777 F. Supp. at 319).

Many of the allegations the First Amended Complaint meet these well-established legal standards and, accordingly, should be stricken.

The bulk of the First Amended Complaint's factual allegations are inflammatory rhetoric about purported conversations concerning widespread sexually nefarious behavior by and among Immutable executives and a client. Indeed, nearly half of the Complaint's factual allegations contain graphic descriptions of alleged conversations about, for example, group sex, anal sex, extramarital affairs, sexually deviant desires such as being "choked" and "bound", sex parties, and the sex and personal lives of current and former Immutable executives and clients, most of whom were not involved in Plaintiff's employment or termination from her employment. Am. Compl. ¶¶ 1-2, 19, 21-45, 57. These alleged conversations supposedly occurred on just three occasions, all outside of New York.

This Court has recently held that allegations concerning mere conversations about sex and the sex lives and orientations of other coworkers do not give rise to a plausible claim of sexual harassment because such conduct is not keyed to a protected characteristic. *See Yost*, 657 F. Supp. 3d at 570-71, 580-81. In *Yost*, as discussed above, the Court held that the plaintiff's allegations

concerning generalized discussions of the sexual activities or orientations of coworkers did not set forth a plausible claim of sexual harassment. *Id.* at 580-81.

As such, there could be *no* other legal or logical reason for Plaintiff to have included these scandalous allegations other than to embarrass Immutable and its executives and inflame and prejudice the public and the jury. Inclusion of these inflammatory allegations clearly prejudices Immutable, and the individuals named in that, as a pleading the First Amended Complaint will be reviewed by the jury at the trial of this matter and its scandalous content will be given undue and inappropriate weight when evaluating the *actual* legal claims at issue. A perfect example of this can be found in the New York Post, which printed an article shortly after the original Complaint was filed detailing Plaintiff's graphic allegations of sexual deviance. *See NY tech boss stripped down in front of female employee, tried to groomed [sic] her: suit*, Kathianne Boniello, New York Post, September 16, 2023, available at http://nypost.com/2023/09/16/female-boss-inundated-ny-woman-with-graphic-sex-talk-suit/.

As this article demonstrates, the Complaint's scandalous rhetoric does nothing but muddy the waters by shifting the focus away from the *actual* legal issues in this case and instead impugns Immutable's reputation with inflammatory rhetoric. This also begs the question: how did the New York Post even receive the Complaint, and was the Complaint drafted in such a scandalous manner solely to garner unfavorable media attention on Immutable?

Courts in this District have stricken similar categories of salacious allegations based on their irrelevance and prejudicial effect.

For example, in *Bray v. Purple Eagle Ent., Inc.*, 2019 WL 1549044, at *9 (S.D.N.Y. Jan. 18, 2019), *report and recommendation adopted*, 2019 WL 549137 (S.D.N.Y. Feb. 12, 2019) (Daniels, G.), the Court granted a motion to strike allegations regarding sexual misconduct, drug

use, and other similar nefarious behavior because such allegations were both irrelevant to the plaintiff's claims. Plaintiff's allegations concerning the sexual preferences and sex lives of current and former Immutable executives should also be stricken due to their scandalous nature and prejudicial effect.

Even arguably relevant portions of a complaint may be stricken where they are scandalous and set out in needless detail. *See, e.g., Bray*, 2019 WL 549137, at *4. In *Bray*, for example, the Court struck even some "arguably relevant" allegations from the subject complaint based on their scandalous nature and potential for prejudice to the defendant. *Id.* (citing *Eaton v. Am. Media Operations*, 1997 WL 7670, at *5 (S.D.N.Y. Jan. 9, 1997) ("Arguably relevant material may ... be stricken ... where it might prejudice the moving party.")).

Likewise, here, to not further prejudice Immutable and unduly influence the jury with inflammatory allegations that have little to no bearing on the issues in this case, the Court should strike the immaterial, impertinent, and scandalous allegations as set forth in **Exhibit B** to the Anthony Decl. Striking these allegations will not only avoid further prejudice to Immutable, but will also promote efficiency and judicial economy by focusing the litigation on the actual legal issues to be determined.

## IV.    CONCLUSION

For the foregoing reasons, Immutable respectfully submits that the Court should dismiss the sexual harassment claims from the First Amended Complaint pursuant to Rule 12(b)(6) or, in the alternative, strike the paragraphs and allegations from the First Amended Complaint as set forth in **Exhibit B** to the Anthony Decl. pursuant to Rule 12(f), and grant such other and further relief as it deems just and proper.

Dated: New York, New York
      April 24, 2024

                                  LITTLER MENDELSON, P.C.


                                  By: */s/ William J. Anthony*
                                      William J. Anthony
                                      wanthony@littler.com
                                      Riane F. Lafferty
                                      rlafferty@littler.com
                                      900 Third Avenue
                                      New York, NY  10022.3298
                                      Telephone:  212.583.9600
                                      Facsimile:  212.832.2719

                                Attorneys for Defendant
                                  IMMUTABLE PTY. LTD.

4880-3487-9110