**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
NATALIA MAZZUCHELLI,               :
                                            :

                          Plaintiff,      :     Civil Action No. 7:23-cv-07885-NSR
                                            :

              v.                            :

                                            :
IMMUTABLE PTY. LTD and LIGHTSOURCE  :
GLOBAL,                                   :
                                            :
                          Defendants.   :
                                            :
------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT IMMUTABLE PTY. LTD'S MOTION TO DISMISS THE AMENDED COMPLAINT

**WIGDOR LLP**

Valdi Licul
Kassandra Vazquez

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

I.        BACKGROUND ................................................................................................................ 1

II.      MAZZUCHELLI'S DIRECT MANAGER SEXUALLY HARASSES HER ................... 2

III.    MAZUCHELLI DISCLOSES HER PREGNANCY .......................................................... 4

IV.   DEFENDANTS TERMINATE MAZZUCHELLI'S EMPLOYMENT ........................... 5

ARGUMENT ................................................................................................................................. 6

I.        THE MOTION TO DISMISS STANDARD ..................................................................... 6

II.      THE NEW YORK STATE HUMAN RIGHTS LAW ....................................................... 7

III.    SEXUAL HARASSMENT ............................................................................................... 10

IV.   FEHA ............................................................................................................................... 16

V.      MOTION TO STRIKE ................................................................................................... 17

CONCLUSION ............................................................................................................................ 19

**Cases** Page(s)

Adams v. City of New York,
 837 F. Supp.2d 108 (E.D.N.Y. 2011)........................................................................ 8

Albunio v. City of New York,
 16 N.Y.3d 472 (2011) .............................................................................................. 8

Alexander v. Possible Productions, Inc.,
 336 F. Supp. 3d 187 (S.D.N.Y. 2018)..................................................................... 15

Alfano v. Costello,
 294 F.3d 365 (2d Cir. 2002)................................................................................... 10

Arista Records, LLC v. Doe 3,
 604 F.3d 110 (2d Cir. 2010)..................................................................................... 6

Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ................................................................................................. 6

Baez v. Anne Fontaine USA, Inc.,
 No. 14 Civ. 6621, 2017 WL 57858 (S.D.N.Y. Jan. 5, 2017) ................................. 15

Banks v. Gen. Motors, LLC,
 81 F.4th 242 (2d Cir. 2023)..................................................................................... 18

Barney v. H.E.L.P. Homeless Service Corp.,
 No. 19 Civ. 5959, 2021 WL 4267629 (S.D.N.Y. Sept. 20, 2021) ........................... 14

Bass v. World Wrestling Fed'n Entm't, Inc.,
 129 F.Supp.2d 491 (E.D.N.Y. 2001)....................................................................... 13

Bell Atl. Corp. v. Twombly,
 550 U.S. 544 (2007) ................................................................................................. 6

Bray v. Purple Eagle Ent., Inc.,
 2019 WL 549137 (S.D.N.Y. Feb. 12, 2019) ............................................................ 19

Brooks v. City of San Mateo,
 229 F.3d 917 (9th Cir. 2000).................................................................................... 17

Buon v. Spindler,
 65 F.4th 64 (2d Cir. 2023).......................................................................................... 7

Campisi v. City Univ. of New York,
    No. 15 Civ. 4859, 2016 WL 4203549 (S.D.N.Y. Aug. 9, 2016) ............................................. 11

Chepak v. Metro. Hosp.,
    555 Fed. App'x 74 ................................................................................................................. 6

Currie v. Kowalewski,
    842 F.Supp. 57 (N.D.N.Y1994) ........................................................................................... 12

Curto v. Medical World Comms., Inc.,
    388 F. Supp. 2d 101 (E.D.N.Y. 2005) ................................................................................... 9

Davis v. Metro North Commuter Railroad,
    No. 23-1041-cv, 2024 WL 1434284 (2d Cir. Apr. 3, 2024) ................................................... 6

DeLuca v. Sirius XM Radio, Inc.,
    No. 12 Civ. 8239, 2017 WL 3671038 (S.D.N.Y. Aug. 7, 2017) ........................................... 15

Doe v. Columbia Univ.,
    831 F.3d 46 (2d Cir. 2016) .................................................................................................... 7

Dykzeul v. Charter Commun., Inc.,
    No. CV 18-05826, 2019 WL 8198218 (C.D. Cal. Nov. 18, 2019) ....................................... 16

First City Nat. Bank & Trust Co. v. Fed. Deposit Ins. Co.,
    730 F.Supp. 501 (E.D.N.Y. 1990) ....................................................................................... 18

Gallagher v. Delaney,
    139 F.3d 338 (2d Cir. 1998) ................................................................................................ 14

Garcia v. College of Staten Island,
    No. 11 CV 2252, 2012 WL 3930448 (E.D.N.Y. July 31, 2012) ........................................... 16

Grimes-Jenkins v. Consolidated Edison Co. of New York, Inc.,
    No. 16 Civ. 4897, 2021 WL 1226658 (S.D.N.Y. Mar. 31, 2021) ......................................... 14

Hernandez v. Kaisman,
    103 A.D.3d 106 (N.Y. App. Div. 1st Dept. 2012) ................................................................ 14

Hoffman v. Parade Publications,
    15 N.Y.3d 285 (N.Y. 2010) ................................................................................................... 7

Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007) ................................................................................... 9

Johnson v. J. Walter Thompson U.S.A., LLC,
   224 F. Supp. 3d 296 (S.D.N.Y. 2016) ........................................................ 11

Kaytor v. Elec. Boat Corp.,
   609 F.3d 537 (2d Cir. 2010) ...................................................................... 18

King v. Aramark Services Inc.,
   96 F.4th 546 (2d Cir. 2024) ....................................................................... 10

Levy v. Young Adult Inst., Inc.,
   103 F. Supp. 3d 426 (S.D.N.Y. 2015) ........................................................ 16

Lipsky v. Commonwealth United Corp.,
   551 F.2d 887 (2d Cir.1976) ........................................................................ 18

Littlejohn v. City of New York,
   795 F.3d 297 (2d Cir. 2015) ........................................................................ 7

MacMillan v. Millenium Broadway Hotel,
   873 F. Supp. 546 (S.D.N.Y. 2012) ............................................................. 15

Mauro v. N.Y.C. Dep't of Educ.,
   No. 21-2671, 2022 WL 17844438 (2d Cir. Dec. 22, 2022) .......................... 7

Mayorga v. Greenberg,
   2023 WL 6307994 ( E.D.N.Y. Sept. 28, 2023) .......................................... 11

McHenry v. Fox News Network, LLC,
   501 F. Supp. 3d 51 (S.D.N.Y. 2020) .......................................................... 11

Meritor Sav. Bank, FSB v. Vinson,
   477 U.S. 57 (1986) ..................................................................................... 12

Mihalik v. Credit Agricole Cheuvreux N.A., Inc.,
   715 F.3d 102 (2d Cir. 2013) ................................................................. 11, 13

Modica v. New York City Dep't of Educ.,
   No. 20 Civ. 4834, 2021 WL 3408587 (S.D.N.Y. Aug. 4, 2021) ................. 14

Nunez v. New York State Dept. of Corrections and Community Supervision,
   No. 14 Civ. 6647, 2015 WL 4605684 (S.D.N.Y. July 31, 2015) ................. 15

Poolt v. Brooks,
   38 Misc.3d 1216, 967 N.Y.S.2d 869 (Sup. Ct. N.Y. Cty. 2013) ................. 15

Prince v. Madison Square Garden,
  427 F. Supp. 2d 372 (S.D.N.Y. 2006).................................................................. 19

Raji v. Societe Generale Americas Securities LLC,
  No. 15 Civ. 1144, 2018 WL 1363760 (S.D.N.Y. Feb. 28, 2018) ......................... 15

Rasmy v. Marriott Int'l, Inc.,
  952 F.3d 379 (2d Cir. 2020).................................................................................. 18

Redd v. New York Div. of Parole,
  678 F.3d 166 (2d Cir. 2012)............................................................................ 12, 18

Rowley v. City of New York,
  No. 00 CIV. 1793, 2005 WL 2429514 (S.D.N.Y. Sept. 30, 2005) ......................... 17

Sanderson v. Leg Apparel LLC,
  No. 19 Civ. 8423, 2023 WL 2753200 (S.D.N.Y. Mar. 31, 2023)........................... 14

Sherwood v. Olin Corp.,
  772 F. Supp. 1418 (S.D.N.Y. 1991)........................................................................ 9

Slue v. N.Y. Univ. Med. Ctr.,
  409 F.Supp.2d 349 (S.D.N.Y. 2006)...................................................................... 18

Stender v. Lucky Stores, Inc.,
  803 F. Supp. 259 (N.D. Cal. 1992) ...................................................................... 17

Suri v. Grey Glob. Grp., Inc.,
  164 A.D.3d 108 (1st Dep't 2018).......................................................................... 13

Syeed v. Bloomberg, L.P.,
  41 N.Y.3d 446 (N.Y. 2024).................................................................................. 7, 8

Taperell v. Tegan Lightning, Inc.,
  No. 18-CV-3343, 2019 WL 1118053 (E.D.N.Y. Mar. 11, 2019) ......................... 8, 9

Terry v. Ashcroft,
  336 F.3d 128 (2d Cir. 2003)............................................................................ 10, 11

Torres v. Pisano,
  116 F.3d 625 (2d Cir. 1997).................................................................................. 11

Vega v. Hempstead Union Free Sch. Dist.,
  801 F.3d 72 (2d Cir. 2015)................................................................................... 6, 7

Walker v. AMR Servs. Corp.,
    971 F.Supp. 110 (E.D.N.Y. 1997).........................................................................13

Whidbee v. Garzarelli Food Specialties, Inc.,
    223 F.3d 62 (2d Cir. 2000)...................................................................................11

Wilcox v. PRC of New York Partnership,
    No. 95-CV-1292, 1997 WL 141682 (N.D.N.Y. Mar. 24, 1997)........................9, 10

Williams v. New York City Hous. Auth.,
    872 N.Y.S.2d 27 (N.Y. App. Div. 1st Dept. 2009) ...................................12, 13, 14

Yost v. Everyrealm, Inc.,
    657 F. Supp. 3d 563 (S.D.N.Y. 2023) ................................................................15

Zimmer v. Warner Bros. Pictures,
    56 Misc. 3d 1208, 63 N.Y.S.3d 307 (N.Y. Sup. Ct. 2016) ...................................15

**Statutes**
28 U.S.C. § 1391....................................................................................................17

Cal. Gov't Code § 12940 .......................................................................................16

N.Y. Exec. Law. § 290...........................................................................................7, 8

**Rules**
Fed. R. Civ. P. 12(f)..........................................................................................17, 18

## PRELIMINARY STATEMENT

Plaintiff Natalia Mazzuchelli ("Plaintiff" or "Mazzuchelli"), by and through her undersigned counsel, Wigdor LLP, hereby submits this Memorandum of Law in Opposition to Defendant Immutable Pty. Ltd.'s ("Immutable" or the "Company") Motion to Dismiss the Amended Complaint. For the reasons to follow, Immutable's Motion should be denied in its entirety.

## STATEMENT OF FACTS

### I.   BACKGROUND

Mazzuchelli began her career with Immutable in September 2022, when she was hired as a Director of Partner Success. Mazzuchelli is a domiciliary of Cold Spring, New York, and thus, other than when she was travelling for work, worked remotely for Immutable—which is headquartered in Australia—from her home in New York. Amended Complaint, Dkt. 38, ("FAC") ¶ 11. Before joining Immutable, Mazzuchelli amassed extensive experience working at a high level for extremely large, successful companies such as Meta, a company that owns and operates some of the largest social media platforms in the world including Facebook, Instagram and WhatsApp. Id. ¶ 16. Indeed, because of her extraordinary work, Meta promoted Mazzuchelli numerous times and entrusted her to lead multiple marketing programs with three million businesses annually. Id. Despite her accomplishments and experience, at Immutable, Mazzuchelli was treated less well because of her sex and desire to grow her family. Over the course of her tenure at Immutable, Mazzuchelli faced a culture that was permeated with sexual harassment, sexist and sexually charged comments and mistreatment.

## II.    MAZZUCHELLI'S DIRECT MANAGER SEXUALLY HARASSES HER

Almost immediately after Mazzuchelli joined Immutable, she was subjected to graphic discussions about sex by her direct manager, Shirley Anderson ("Anderson").  For instance, on September 29, 2022, a mere three days after Mazzuchelli started, and the first time Mazzuchelli ever met Anderson in-person while travelling for work, Anderson launched into a graphic discussion about her own sexual desires, including that she enjoys being choked and bound during intercourse and dislikes anal intercourse.  Id.  ¶ 27.  Anderson did not stop there; she also disclosed that she likes to sleep with multiple people at the same time, goes to parties with the goal of meeting people for sex and emphasized her open marriage by detailing her husband having sex with other women.  Id.  ¶ 28.  In a transparent effort to lure Mazzuchelli into a sexual encounter, Anderson expressed her desire to "keep exploring sexually" and sleep with more women.  Id. ¶ 29.  Steadfast in her pursuit to speak with Mazzuchelli about her sex life, Anderson also detailed a sexual encounter with the founder of one of Immutable's main customers ("Client") and asked her subordinate, Mazzuchelli, for advice about the affair.  Id. ¶ 30.  Mazzuchelli did not welcome the graphic sexual discussion with her boss and tried to deflect the discussion by stating that the decision was up to Anderson, but that Anderson should consider her children.  Id. ¶ 31.  The night ended quickly thereafter.

The very next day, Anderson asked Mazzuchelli to borrow some "going out clothes," which Mazzuchelli agreed to loan Anderson.  Id. ¶ 32.  Later that same day, Anderson insisted that she return to Mazzuchelli's hotel room to return the clothes.  Id. ¶ 33.  To avoid Anderson's sexual overtures, Mazzuchelli repeatedly told Anderson to return the clothes the following day, but Anderson refused.  Id. ¶ 34.  Once Anderson entered Mazzuchelli's hotel room, Anderson took off the borrowed clothes, completely undressed in front of Mazzuchelli and sat on Mazzuchelli's bed

in nothing but a bra and underwear, clearly expecting the two would have sex. Id. ¶ 35. Mazzuchelli was scared—after all, it was only her first week of work and her direct manager was completely undressed on her bed. Mazzuchelli was fearful of retaliation and wanted to avoid a conflict with her direct manager, so she excused herself to the bathroom where she called a friend to come to her hotel room. Id. ¶ 36. When Mazzuchelli emerged from the bathroom, Anderson, still undressed, began to discuss sex, including that she intended to move forward with an extramarital affair, and then Anderson began to fondle her own breasts and asked Mazzuchelli whether she should get a boob job. Id. ¶¶ 37-38. Once again, trying to keep the peace with her manager, Mazzuchelli stated that it was Anderson's choice whether she wanted cosmetic surgery. Id. ¶ 39. At that point, and much to Mazzuchelli's relief, her friend arrived at the hotel room—only then, Anderson changed the topic of conversation, got dressed and left shortly after. Id. ¶41.

A few days later, Anderson once again detailed her inappropriate relationship with the Client. Anderson described to Mazzuchelli how the Client was stroking her while the pair were in his car and expressing that they should be together. Id. ¶¶ 42-43. Mazzuchelli was clearly uncomfortable, merely listened to Anderson go on about her inappropriate relationship with the Client and responded as little as possible. Id. ¶ 44.

Once again, in mid-March, Anderson disclosed to Mazzuchelli that another female co-worker visited Anderson's room after an outing and that the two discussed their mutual desire to have sexual encounters outside of their respective marriages, but that Anderson was "too tired" at the time. Id. ¶ 45. Immediately after, Anderson began to make inappropriate sexual comments about her colleagues, including that:

- Robbie Ferguson (Co-Founder and President), who is "asexual," is too "pent up" and so "jittery" and "can't stand still" because he "needs to have more sex."

- Alex Connolly (Co-Founder and Chief Technology Officer) is a "prude" and likely not "sexually happy" because he is in a "religious marriage," but he might be "open to having sex and other relationships."

- James Ferguson (Chief Executive Officer) is "more calm" and not as "pent up" because he is engaged and "gets to have more sex."

- Gillian Findlay (Chief Operating Officer) is one of her (Anderson's) "best friends," "parties a lot," is "very sexually active" and "shows up to work intoxicated."

Id. ¶ 46. True to form, Anderson continued the sexually charged conversation, this time turning her sexual focus to Mazzuchelli. Anderson then discussed, again, her own bisexuality, her "desire to date more women" and her disdain for anal sex. Id. ¶ 48. Once again, Mazzuchelli did not indulge Anderson regarding Anderson's wholly inappropriate topics of conversation and tried to maintain distance between herself and Anderson. Id. ¶ 49.

III.    **MAZZUCHELLI DISCLOSES HER PREGNANCY**

Later that month, Anderson disclosed that she would be leaving Immutable in April 2023. Id. ¶ 50. Mazzuchelli was relieved. Id. In late March 2023, Mazzuchelli was introduced to her new manager, and Anderson's replacement, Radha Amalraj ("Amalraj"), who was in the process of being onboarded by Anderson. Id. ¶ 51.

Shortly thereafter, on April 5, 2023, Mazzuchelli told Anderson, who was still her direct manager, that she was pregnant and that her pregnancy was "high-risk." Id. ¶ 52. Rather than show a modicum of excitement or support for Mazzuchelli's high-risk pregnancy, Anderson immediately questioned whether Mazzuchelli could "do this job pregnant?" Id. ¶ 53. Mazzuchelli responded that, of course, she was more than capable of remaining in her current role while simultaneously pregnant, however, Anderson was unconvinced because, in her view, Mazzuchelli had a "global intense" job. Id. ¶¶ 54-55. Once again, Mazzuchelli had to defend her ability to do

her job while pregnant and she reiterated that she could do her job while pregnant.  Id. ¶ 56.

Nevertheless, Anderson questioned whether Mazzuchelli was "motivated to be in this role," as if

Mazzuchelli's pregnancy deterred motivation.  Id. ¶ 57.

That same day, after quizzing Mazzuchelli about her ability to be in her current role while

pregnant, Anderson gave Mazzuchelli a false, negative performance review—the only negative

feedback Mazzuchelli received during her tenure.  Id. ¶ 58.

## IV.  **DEFENDANTS TERMINATE MAZZUCHELLI'S EMPLOYMENT**

On April 21, 2023, Mazzuchelli complained to Robert Knight ("Knight") (Global Human

Resources Business Partner) that she was the victim of discrimination and disclosed Anderson's

discriminatory comments regarding her ability to continue in her role while pregnant and her

negative performance review.  Id. ¶¶ 60-61.  In response to Mazzuchelli's complaint, Knight

admitted that Anderson had behaved inappropriately before.  Id. ¶ 62.  Days later, Mazzuchelli's

new boss, Amalraj, became concerned because executives had suddenly "raised concerns" about

Mazzuchelli, but Amalraj had no idea what the "concerns" could be and described Mazzuchelli as

a "high caliber talent" and who deserved "only positive feedback."  Id. ¶¶ 62-63.

Less than a month after disclosing her pregnancy to Anderson, and a mere ten days after

she complained of discrimination, Mazzuchelli was fired without being provided a substantive

reason for the dismissal.  Id. ¶¶ 65-66.  Indeed, Jason Suen (Chief Commercial Officer) and

Katherine Rau (Chief People Officer) simply told Mazzuchelli that her employment was at-will

and that her dismissal was the "best course of action."  Id. ¶ 67.  During the conversation, Rau

repeatedly referred to Mazzuchelli's pregnancy as her "situation," and suggested that an offer of

five months of COBRA as part of a severance package was generous given Mazzuchelli's

"situation."  Id. ¶ 68.

<u>**ARGUMENT**</u>

**I.      <u>THE MOTION TO DISMISS STANDARD</u>**

A complaint is sufficient where it asserts "enough facts to state a claim that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal citations omitted). The standard is one of "flexible plausibility," "requiring a pleader to amplify her complaint with sufficient factual allegations to 'nudge [her] claims across the line from conceivable to plausible.'" <u>Chepak v. Metro. Hosp.</u>, 555 Fed. App'x 74, 76 (quoting <u>Twombly</u>, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must "assume [the] veracity" of the allegations set forth, draw all "reasonable inference[es]" in the plaintiff's favor and use its "judicial experience and common sense" to conduct a "context specific" analysis of the complaint. <u>Ashcroft</u>, 556 U.S. at 678-79; <u>see</u> <u>Davis v. Metro North Commuter Railroad</u>, No. 23-1041-cv, 2024 WL 1434284, at *2 (2d Cir. Apr. 3, 2024) (reversing grant of motion to dismiss where the "the district court erred by engaging in impermissible factfinding"). The plaintiff is not required to plead "specific evidence" explaining precisely how the defendant's conduct was unlawful, <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 119-21 (2d Cir. 2010), but only facts sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted).

In discrimination cases, the Second Circuit has made clear that the plaintiff is "not required to plead a prima facie case of discrimination." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801

F.3d 72, 84 (2d Cir. 2015). She is not even required to "give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." Littlejohn v. City of New York, 795 F.3d 297, 306 (2d Cir. 2015). She "need only give plausible support to a minimal inference of discriminatory motivation." Id.; see Buon v. Spindler, 65 F.4th 64, 83 (2d Cir. 2023) ("we have cautioned courts to be 'mindful of the elusive nature of intentional discrimination' when making a 'plausibility determination' at the motion-to-dismiss phase because 'rarely is there direct, smoking gun, evidence of discrimination'") (quoting Vega, 801 F.3d at 86). Indeed, the Second Circuit has "often vacated improper dismissals in discrimination cases where courts apply overly stringent pleading standards, cautioning against imposing 'too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage.'" Mauro v. N.Y.C. Dep't of Educ., No. 21-2671, 2022 WL 17844438, *2 (2d Cir. Dec. 22, 2022) (quoting Doe v. Columbia Univ., 831 F.3d 46, 55 n.8 (2d Cir. 2016)).

## II.     THE NEW YORK STATE HUMAN RIGHTS LAW

The New York State Human Rights Law ("NYSHRL") protects "inhabitants" and persons "within the state," meaning those who work in New York fall within the class of persons who may bring discrimination claims in New York. N.Y. Exec. Law. § 290(3); see also Hoffman v. Parade Publications, 15 N.Y.3d 285 (2010). The statute's reach is broad enough to protect even those persons who, unlike Mazzuchelli, never stepped foot in New York but "engaged in affirmative conduct to obtain an actual job opportunity based in New York City or State" and, therefore, "sought to become an inhabitant or person within those geographical boundaries." Syeed v. Bloomberg, L.P., 41 N.Y.3d 446, 452 (N.Y. 2024). Such an expansive reading is mandated not only by the text of the statute, but also by the legislative requirement that courts "construe the Human Rights Law 'broadly in favor of discrimination plaintiffs, to the extent that such a

construction is reasonably possible.'" Id. at 451 (quoting Albunio v. City of New York, 16 N.Y.3d 472, 477–478 (2011)). This broad reach is further "buttressed by important policy considerations," such as the obligation to "assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" free from "discrimination, prejudice, [o]r intolerance." Id. at 452 (quoting N.Y. Exec. Law. § 290(3)).

Here, there can be no doubt that Mazzuchelli is an "inhabitant" of New York. She both "live[d]" and "work[ed]" in Cold Spring, New York. FAC ¶¶ 7, 11. Accordingly, she is entitled to the protection of the NYSHRL and can bring claims for sexual harassment. Immutable nevertheless claims that "the NYSHRL does not provide a cause of action for New York residents for discriminatory acts committed outside of New York by a foreign corporation." Memorandum of Law in Support of Immutable PTY. LTD's Motion to Dismiss ("Immutable Mem.") 1. In Immutable's view, because Mazzuchelli, a New York resident and employee, suffered some sexually harassing conduct from her supervisor while outside of New York, she cannot bring a sexual harassment claim under the NYSHRL.[1] Immutable misunderstands the law.

Foreign corporations are not immune to claims under the NYSHRL. Indeed, "[t]he entire [NYSHRL] ... applies to any claimed discriminatory practice by [defendants] that occurred within New York, even though [defendants] [are] a foreign corporation [and non-resident individuals],"

---

[1] Immutable does not argue that Mazzuchelli is unprotected by the NYSHRL with respect to her claims that Immutable terminated her employment because of her pregnancy and because she protested discrimination. Nor can it. Mazzuchelli unquestionably lost a New York-based job and, therefore, she would have a NYSHRL claim even if she didn't live or work in New York at the time of the adverse act. Syeed, 41 N.Y.2d at 452; see Taperell v. Tegan Lightning, Inc., No. 18CV3343SJFARL, 2019 WL 1118053, at *4 (E.D.N.Y. Mar. 11, 2019) ("[s]ince the amended complaint plausibly alleges that the unlawful discriminatory practice at issue, i.e., defendants' termination of plaintiff's employment allegedly because of her sex and pregnancy, affected the terms, conditions, and privileges of her employment in New York, it states a plausible NYSHRL claim, irrespective of the fact that plaintiff worked from a home office in New York instead of in a traditional office").

Taperell, 2019 WL 1118053, at *2 (E.D.N.Y. Mar. 11, 2019) (quoting Sherwood v. Olin Corp., 772 F. Supp. 1418, 1425 (S.D.N.Y. 1991)), so long as the "discriminatory acts affected the terms and conditions of [her] employment" within New York.  Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d 345, 362 (S.D.N.Y. 2007).  Importantly, "a plaintiff need not allege that the discrimination originated in New York if she alleges . . . that the discriminatory practice affected the terms and conditions of her employment in New York." Curto v. Medical World Comms., Inc., 388 F. Supp. 2d 101, 107 (E.D.N.Y. 2005) (quoting Wilcox v. PRC of New York Partnership, No. 95-CV-1292, 1997 WL 141682, at *5 (N.D.N.Y. Mar. 24, 1997)).  Thus, for example, a New York-based employee harassed outside the state can bring NYSHRL claims where the harassing conduct made her job more difficult to perform.  Id.

That is precisely Mazzuchelli's predicament.  She was the repeated target of her direct supervisor's sexual attention.  FAC ¶¶ 24-49.  She made repeated efforts to "oppose[]" and "rebuff[]" the sexually-charged behavior, while also maintaining professional decorum because "Mazzuchelli was afraid of retaliation."  FAC ¶ 2.  Mazzuchelli ultimately found "relief" when, after suffering Anderson's harassment in San Francisco, FAC ¶ 26, on a business flight to Los Angeles, FAC ¶ 42, and in Australia, FAC ¶ 45, she learned that Anderson "would be leaving Immutable," FAC ¶ 50, meaning that Anderson's harassment continued to have an impact on Mazzuchelli's employment even while she worked from New York.  These allegations, viewed in the light most favorable to Mazzuchelli, are more than sufficient to make it plausible that Anderson's graphic sex-based behavior affected the terms and conditions of Mazzuchelli's employment in New York.[2]

---

[2] The cases make clear that a plaintiff is not required to "provide[] details about how [defendant's] harassing conduct affected her employment" to survive a motion to dismiss.  Curto,

9

King v. Aramark Services Inc., 96 F.4[th] 546 (2d Cir. 2024), does not help Immutable's position. In King, the Second Circuit found that the NYSHRL did not apply because "New York's connection to King's claims [was] too tenuous to give rise to [NYSHRL] liability" because (1) King's employer "tasked [her] with overseeing the company's operations in several facilities located in Virginia and West Virginia"; (2) the employer "gave [her] an office in Winchester, Virginia – the location of [the employer's] largest facility"; (3) "to do her job, King had to rent a home in Virginia"; and (4) the employer "paid King mileage reimbursement from that home *in Virginia* to and between the various [employer] facilities." Id. at 557 (emphasis in original). That King's employer permitted her "to do *some* of her work from her New York residence," in part, "to care for her ill son," was insufficient to create New York liability. Id. at 558 (emphasis in original). Here, of course, Mazzuchelli both lived and worked in New York for Immutable and, therefore, has viable NYSHRL claims. See King, 96 F.4[th] at 558 (acknowledging cases applying the NYSHRL where "the plaintiff's primary site of work was her home office in New York").

### III.   SEXUAL HARASSMENT

An employer violates federal anti-discrimination laws where it subjects an employee to conduct that is "sufficiently severe or pervasive to alter the conditions of [the employee's] employment and create an abusive working environment." Terry v. Ashcroft, 336 F.3d 128, 147 (2d Cir. 2003) (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)). Determining whether the offensive conduct meets the legal threshold is a fact-intensive inquiry that rests on a host of factors. Id. at 148. Importantly, however, the victimized employee is not required to show that the environment was "unendurable" or "intolerable," or that her "psychological well-being"

---

388 F. Supp. 2d at 107 (quoting Wilcox, 1997 WL 141682, at*2). Nevertheless, with the Court's permission, Mazzuchelli can easily amend her pleading to amplify this point.

was damaged.  Id. (internal citations omitted).  Quite the contrary, the Second Circuit has cautioned that "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases."  Id. (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000)).  Rather, "[w]henever the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse, it is actionable under Title VII, so long as the employee subjectively experienced a hostile work environment."  Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997).

Accordingly, courts have frequently declined to decide the issue at the motion to dismiss stage.  See, e.g., Campisi v. City Univ. of New York, No. 15 Civ. 4859 (KPF), 2016 WL 4203549, at *6 (S.D.N.Y. Aug. 9, 2016) (explaining that hostile work environment claims present mixed questions of law and fact that lend itself to a jury determination); Johnson v. J. Walter Thompson U.S.A., LLC, 224 F. Supp. 3d 296, 309 (S.D.N.Y. 2016) ("[T]he interpretation of any ambiguous conduct is properly an issue for the jury.") (internal citations and quotations omitted).

"The NYSHRL was amended on October 11, 2019 to eliminate the 'severe or pervasive' requirement in favor of a more lenient standard of liability."  Mayorga v. Greenberg, 2023 WL 6307994, at *8 ( E.D.N.Y. Sept. 28, 2023).  These recent amendments were intended to conform the statute to the liberal standards of New York City's anti-discrimination law.  See McHenry v. Fox News Network, LLC, 501 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).  Accordingly, to prove sexual harassment, the victimized employee need only show that she was subjected to "unwanted gender-based conduct."  McHenry, 501 F. Supp. 3d 51, 66 (citations omitted).  "Even 'a single comment that objectifies women'" may be actionable.  Mihalik v. Credit Agricole Cheuvreux

N.A., Inc., 715 F.3d 102, 111 (2d Cir. 2013) (quoting Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 41 n.30 (N.Y. App. Div. 1st Dept. 2009)).

Mazzuchelli plausibly pleads a sexual harassment claim under either standard. It is well settled that "[u]nwelcome sexual advances" meet even the higher federal threshold. Redd v. New York Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). Here, the Amended Complaint is replete with allegations that support the conclusion that Anderson attempted to lure Mazzuchelli into a sexual encounter including Anderson repeatedly discussing her own bisexuality, desire to "sleep with more women" and willingness to engage in sexual encounters with Immutable employees and clients. FAC ¶¶ 27, 29, 30, 45-46. Indeed, Anderson routinely attempted to goad Mazzuchelli into unwanted, graphic discussions regarding Anderson's own sex life and the sex life of other Immutable employees. Id. Despite its best efforts to paint Anderson's sexual harassment as "generalized discussions about her and others sex lives," Immutable cannot escape the fact that Anderson frequently discussed her own desire to sleep with more women and then undressed—leaving herself almost completely naked—in the hotel room of her female subordinate, Mazzuchelli, during a work trip. Id. ¶¶ 32-41; Immutable Mem. 6. Indeed, despite Mazzuchelli's protests, Anderson insisted on going to Mazzuchelli's hotel room so that she could disrobe in front of Mazzuchelli. Id. ¶¶ 34-35. Mazzuchelli expressly alleges that Anderson's undressing left her so uncomfortable that Mazzuchelli excused herself to the bathroom and called a friend so that she would not be alone with Anderson. Id. ¶ 36. She also asserts that Anderson's harassing conduct—ranging from graphic sexual conversations to propositions for sex—was, at all times, unwelcome. Id. ¶¶ 2, 31, 36, 49. Courts have consistently found such patterns of unwanted sexually charged behavior sufficient to create a hostile work environment. See, e.g., Currie v. Kowalewski, 842 F.Supp. 57

(N.D.N.Y1994), <u>aff'd</u>, 40 F.3d 1236 (2d Cir.1994) (finding a hostile environment where the plaintiff was subjected to sexual innuendos, sexual advances, and sexual talk); <u>Adams v. City of New York</u>, 837 F.Supp.2d 108, 126 (E.D.N.Y. 2011) (finding "unwanted sexual advances" to be "the sort of frequent contact that would make any 'reasonable [person]' severely uncomfortable in the workplace"); <u>Bass v. World Wrestling Fed'n Entm't, Inc.</u>, 129 F.Supp.2d 491, 501 (E.D.N.Y. 2001) (finding that "repeated and unwelcome sexual advances and intrusions" can sustain a cause of action for hostile work environment); <u>Walker v. AMR Servs. Corp.</u>, 971 F.Supp. 110 (E.D.N.Y. 1997) (finding that repeated propositioning over two-month period "if true, sufficiently altered the conditions of plaintiffs employment and may be considered by a reasonable jury to qualify as severe or pervasive harassment").

That Anderson did not expressly proposition Mazzuchelli for sex does not matter. "Sexual advances are not always made explicitly." <u>Suri v. Grey Glob. Grp., Inc.</u>, 164 A.D.3d 108, 116 (1st Dep't 2018). And that a harasser "did not expressly demand sex" is hardly dispositive. <u>Id.</u> Rather, "[i]t is not the province of the court itself to decide what inferences could be drawn"; so long as there are any allegations "from which a reasonable inference could be drawn in favor of the non moving party," dismissal is improper. <u>Id.</u> (citation omitted).[3]

Immutable is free, of course, to argue that the harassing conduct consisted of mere "petty slights and trivial inconveniences." <u>Mihalik</u>, 715 F.3d at 113. But this defense applies only to "truly insubstantial cases." <u>Williams</u>, 872 N.Y.S.2d at 41. For all other cases, including those that are arguably "borderline," it is up to "a jury made up of a cross-section of our

---

[3] It is more than plausible to infer that a supervisor who peppers her subordinate with stories of her sexual escapades, expresses a desire to have more sex with colleagues, including other women, and then partially undresses in front of the subordinate to discuss her breasts, is more than likely seeking a sexual interaction. One would have to be blind to the ways in which people interact to find no such connection as a matter of law.

heterogeneous communities that provides the appropriate institution for deciding whether borderline situations should be considered as sexual harassment." Id. (quoting Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir. 1998)).

Few, if any, reasonable people would find that unwanted discussions with a supervisor about group sex, bondage, anal sex and extramarital affairs, accompanied by the supervisor, while almost naked, fondling and discussing her breasts, to be "truly insubstantial." Hernandez v. Kaisman, 103 A.D.3d 106, 115 (1st Dept. 2012). At the very least, a court cannot make that determination as a matter of law at the pleading stage.

Indeed, courts have routinely rejected such efforts by employers to avoid liability by attempting to trivialize such conduct. See Hernandez, 103 A.D.3d at 115 ("isolated" comments to female employees about the size of their "backside" and "breasts" sufficient to show harassment); Sanderson v. Leg Apparel LLC, No. 19 Civ. 8423 (GHW), 2023 WL 2753200, at *14-15 (S.D.N.Y. Mar. 31, 2023) ("two comments about Sanderson's clients being his 'boyfriend'" sufficient to show harassment); Barney v. H.E.L.P. Homeless Service Corp., No. 19 Civ. 5959 (KPF), 2021 WL 4267629, at *15 (S.D.N.Y. Sept. 20, 2021) (three "offensive references to gender identity and sexual orientation" during a "six-week period" sufficient to show harassment); Modica v. New York City Dep't of Educ., No. 20 Civ. 4834 (JMF), 2021 WL 3408587, at *7 (S.D.N.Y. Aug. 4, 2021) ("Modica's allegation that Christie 'ridiculed' her at the December 18, 2018, mediation meeting on the basis of her disability is enough to plead a plausible NYCHRL hostile work environment claim."); Grimes-Jenkins v. Consolidated Edison Co. of New York, Inc., No. 16 Civ. 4897 (AT), 2021 WL 1226658, at *8 (S.D.N.Y. Mar. 31, 2021) (plaintiff sufficiently alleged harassment where she "testified that Gibbs made comments about her body in the presence of others, that Yang and Polanco left the bathroom door open while Plaintiff was using the

restroom and that Vormittag made comments about her not wanting a job because of her family and children"); Alexander v. Possible Productions, Inc., 336 F. Supp. 3d 187, 191 (S.D.N.Y. 2018) (listing plaintiff as a "Sexytime Double" on a daily "call sheet" sufficient to show harassment because "it reduced [plaintiff] to a sexual object"); Raji v. Societe Generale Americas Securities LLC, No. 15 Civ. 1144 (AT)(JLC), 2018 WL 1363760, at *5 (S.D.N.Y. Feb. 28, 2018) (asking if plaintiff was "gay" in combination with "derogatory greetings" are not "the type of 'petty slights and trivial inconvenience' that most employees encounter in the workplace"); DeLuca v. Sirius XM Radio, Inc., No. 12 Civ. 8239 (CM), 2017 WL 3671038, at *21 (S.D.N.Y. Aug. 7, 2017) ("isolated" comments calling plaintiff a "dyke," "her work gay," and another a "faggot" showed harassment); Baez v. Anne Fontaine USA, Inc., No. 14 Civ. 6621 (KBF), 2017 WL 57858, at *15 (S.D.N.Y. Jan. 5, 2017) (spreading rumors that plaintiff "went braless to a meeting" sufficient to establish harassment); Zimmer v. Warner Bros. Pictures, 56 Misc. 3d 1208(A), 63 N.Y.S.3d 307 (N.Y. Sup. Ct. 2016) ("two remarks," including statement that plaintiff's coat was "too gay," sufficient to show harassment because while the "remarks are not pervasive," they were "harsh and hurtful"); Nunez v. New York State Dept. of Corrections and Community Supervision, No. 14 Civ. 6647 (JMF), 2015 WL 4605684, at *11 (S.D.N.Y. July 31, 2015) ("persistent romantic overtures" sufficient to show harassment); Poolt v. Brooks, 38 Misc.3d 1216(A), 967 N.Y.S.2d 869 (Sup. Ct. N.Y. Cty. 2013) ("A few comments allegedly made within one week of plaintiff's work suffice to show sexual harassment.") (citation omitted); MacMillan v. Millenium Broadway Hotel, 873 F. Supp. 546, 559 (S.D.N.Y. 2012) ("display of the voodoo doll was not a 'petty slight or trivial inconvenience'").[4]

---

[4] Immutable's reliance on Yost v. Everyrealm, Inc., 657 F. Supp. 3d 563 (S.D.N.Y. 2023), is misplaced. In Yost, the plaintiff's supervisor exclusively discussed the sexual activities and orientations of other employees—here, Anderson detailed her own sexual desires and

In short, a jury must decide whether Anderson sexually harassed Mazzuchelli or whether these are the types of "petty slights or trivial inconveniences" that an employee must endure in the workplace.[5]

## IV.   **FEHA**

The California Fair Employment and Housing Act ("FEHA") makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment . . . from occurring."  Cal. Gov't Code § 12940(k).  Under FEHA, it is unlawful to harass an employee on the basis of sex.  Cal. Gov't Code § 12940(j)(1).  Harassment on the basis of sex includes harassment based on gender.  Cal. Gov't Code § 12940(j)(4)(c).  In the Ninth Circuit, courts analyze Title VII and FEHA discrimination claims together.  See, e.g., Dykzeul v. Charter Commun., Inc., No. CV 18-05826 (DSF)(GJSx), 2019 WL 8198218 (C.D. Cal. Nov. 18, 2019);

---

escapades, including her desire to sleep with more women to her female subordinate, Mazzuchelli. FAC ¶¶ 27, 29, 30, 45-46.  She also engaged in physical action—undressing and fondling her own breasts.  Taking these allegations as true and drawing all inferences in Mazzuchelli's favor, as the Court must, Mazzuchelli sufficiently alleges that Anderson routinely engaged in unwelcome, sexual advances and graphic discussion about her own sex life and the sex lives of others in violation of Title VII and the NYSHRL.

[5] Immutable points out that it may be able to avail itself of the Faragher-Ellerth affirmative defense because it has an antidiscrimination policy.  Immutable Mem. 10, n1.  However, Immutable does not raise this as a separate ground for dismissal and only addresses the issue in a footnote.  See, e.g., Levy v. Young Adult Inst., Inc., 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015) ("[T]he Court will not evaluate arguments that are so drastically underdeveloped, particularly when they are raised only in a footnote.").  Moreover, Immutable has the affirmative burden to prove the defense, which it cannot do based solely on the pleading especially where, as here, the complaint makes no mention of such policies.  See Garcia v. College of Staten Island, No. 11 CV 2252 (KAM) (LB), 2012 WL 3930448 at *6 (E.D.N.Y. July 31, 2012) (employer's motion to dismiss based upon the Faragher/Ellerth affirmative defense denied, without prejudice for renewal on a summary judgment motion, since "even assuming the Court could view [the employer's harassment policy] on this motion and that it was in effect at the time of these incidents, it is unclear whether the parties' actions complied with the policy").

see also Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (assessing Title VII and FEHA claims together "under federal law because Title VII and FEHA operate under the same guiding principles").

As discussed *supra* at § III, there is no question that Mazzuchelli plausibly alleged discrimination in violation of Title VII, and thus, has similarly done so under FEHA. See Stender v. Lucky Stores, Inc., 803 F. Supp. 259, 336 (N.D. Cal. 1992) ("As plaintiffs have satisfied their burden of proof under Title VII, they have also satisfied their burden of proof under [] FEHA.").

Immutable nevertheless attempts to escape liability by claiming that FEHA does not apply because the unlawful acts did not occur in California. Immutable Mem. 13-14. But they did. While in California, Anderson launched into an unwanted graphic discussion about sex, insisted on making her way into Mazzuchelli's hotel room despite Mazzuchelli's express objections, unclothing herself, fondling her own breasts and remaining undressed on Mazzuchelli's bed. FAC ¶¶ 27-30, 33-41, 45-48. Indeed, Mazzuchelli alleges that she was so uncomfortable by Anderson disrobing that she had to excuse herself to the bathroom and call a friend to help. FAC ¶ 36. Accordingly, FEHA applies.[6]

## V.   **MOTION TO STRIKE**

Federal Rule of Civil Procedure 12(f) ("Rule 12(f)") provides that a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Id. The Second Circuit

---

[6] In a footnote, Immutable argues that if Mazzuchelli's Title VII and NYSHRL sexual harassment claims are dismissed, venue in this Court is improper. Immutable Mem. 13, n.2. But Immutable has not moved to change venue and addressing the issue in a footnote is insufficient. See Rowley v. City of New York, No. 00 CIV. 1793 (DAB), 2005 WL 2429514, at *6 (S.D.N.Y. Sept. 30, 2005) ("mere mention in a footnote does not amount to raising an argument"). Moreover, Immutable has not moved to dismiss Mazzuchelli's Title VII and NYSHRL pregnancy discrimination and retaliation claims Regardless, Immutable concedes that Mazzuchelli is entitled to bring her claims where she "resides." Immutable Mem. 13, n. 2 (quoting 28 U.S.C. § 1391(e)).

has taken a stringent approach to the application of Rule 12(f) and will generally deny the motion "unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.1976); see id. (the court "should not tamper with the pleadings unless there is a strong reason for so doing"). For a party to prevail on a Rule 12(f) motion to strike it must be clear from the pleadings that the challenged allegation "has no bearing on the subject matter of the litigation and that [its] inclusion will prejudice the defendants." First City Nat. Bank & Trust Co. v. Fed. Deposit Ins. Co., 730 F.Supp. 501, 514 (E.D.N.Y.1990); see also Slue v. N.Y. Univ. Med. Ctr., 409 F.Supp.2d 349, 374 (S.D.N.Y. 2006) ("[m]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute").

Here, of course, Mazzuchelli alleges that she is the victim of sexual harassment by her immediate supervisor who would routinely subject her to graphic sexual conversations, unwanted sexual advances and invitations for a sexual relationship. Id. ¶¶ 27-31, 35, 45-49. Accordingly, what Immutable attempts to describe as "scandalous" allegations are, in fact, the factual underpinnings of Mazzuchelli's claim.

Nor would it be proper to strike, and therefore refuse to consider, Anderson's graphic sexual discussions about Mazzuchelli's coworkers. It is well settled that a defendant may not defeat a sexual harassment claims by analyzing "individual incidents in isolation" or in "piecemeal fashion." Redd, 678 F.3d at 176 (quoting Kaytor v. Elec. Boat Corp., 609 F.3d 537, 548 (2d Cir. 2010)). "The hostility of the work environment 'as a whole' is the central inquiry in a hostile work environment claim, and 'liability is determined only by looking at all the circumstances.'" Banks v. Gen. Motors, LLC, 81 F.4th 242, 262 (2d Cir. 2023) (quoting Rasmy v. Marriott Int'l, Inc., 952 F.3d 379, 389 (2d Cir. 2020)). And unwanted discussions about the sex lives of others are certainly

relevant to determining the whole environment.[7] See, e.g., Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 380 (S.D.N.Y. 2006) (holding that remarks regarding the sexual morals of coworkers and unwelcome conversations on sexual topics, including the sex lives of coworkers, combined with sexual advances made out a claim for sexual harassment).

## CONCLUSION

For these reasons, Mazzuchelli respectfully requests that the Court deny Immutable's motion in its entirety.

Dated: June 24, 2024
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
      Valdi Licul
      Kassandra Vazquez

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

---

[7] Bray v. Purple Eagle Ent., Inc., 2019 WL 549137 (S.D.N.Y. Feb. 12, 2019), is wholly distinguishable. In Bray, the plaintiff asserted copyright–not sexual harassment–claims. Accordingly, the court struck allegations regarding sexual misconduct, drug use and other nefarious behavior as they were wholly irrelevant. Id.