USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/18/2024__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATALIA MAZZUCHELLI,

                              Plaintiff,

        -against-

IMMUTABLE PTY. LTD and
LIGHTSOURCE GLOBAL,

                              Defendants.

---

23-cv-7885 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Natalia Mazzuchelli ("Mazzuchelli" or "Plaintiff") initiated this action on September 6, 2023 (ECF No. 1), alleging violations of N.Y. Executive Law § 290 *et seq* ("NYSHRL"), against Defendants Immutable Pty. LTD ("Immutable") and Lightsource Global ("Lightsource") (together, "Defendants"). Plaintiff filed an Amended Complaint on March 14, 2024 (ECF No. 38), adding claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* ("Title VII") and the California Fair Employment & Housing Act, Cal. Gov. Code §§ 12940 *et seq* ("FEHA").

Presently before the Court are Defendant Immutable's Motion to Dismiss Plaintiff's claims and Lightsource's Motion to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, Defendant Lightsource's Motion to Dismiss is GRANTED; Defendant Immutable's Motion to Dismiss is GRANTED in part and DENIED in part. Furthermore, Defendant Immutable's Motion to Strike portions of Plaintiff's First Amended Complaint is DENIED.

1

**BACKGROUND**

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

Plaintiff is a female resident of Cold Spring, New York. (Am. Compl. ¶ 11.) Immutable is a technology company incorporated and headquartered in Australia. (*Id.* ¶ 12.) Lightsource is an employer services company incorporated in Delaware and headquartered in Florida. (*Id.* ¶ 13.) Mazzuchelli is an accomplished strategist and solutions professional with almost two decades of experience. (*Id.* ¶ 14.) Plaintiff graduated from Baruch College with a bachelor's in international marketing management and a minor in corporate communications. (*Id.* ¶ 15.) Afterwards, Plaintiff worked as a Client Solutions Manager at Meta, and was promoted numerous times, rising to the position of Head of Global Vertical Solutions, leading marketing programs with three million businesses globally. (*Id.* ¶ 16.) After working successfully at Meta for 9 years, Plaintiff transitioned to working at Coinbase as its Head of Global Partner success. (*Id.* ¶ 17.)

Then, in August of 2022, Plaintiff came across the opportunity for a role at Immutable as its Director of Partner success. (*Id.* ¶ 18.) Plaintiff was more than qualified for the role given her experience in business development and vertical solutions. (*Id.*) On September 8, 2023, Plaintiff accepted and executed Defendants' offer of employment (the "Employment Agreement"). (*Id.* ¶ 19.) The Employment Agreement stated "[o]n behalf of Lightsource HR Global II LLC, we would like to extend this offer of employment"; Immutable was identified in the agreement as the "End Client." (*Id.* ¶ 20.) Plaintiff was required to notify Immutable and Lightsource of any sick days, paid time off days, or unpaid leaves of absence. (*Id.* ¶ 22.) The Employment Agreement was executed by Plaintiff and Shawn Stutz, Division President of Lightsource. (*Id.* ¶ 23.)

Plaintiff started working at Immutable on September 26, 2022. (*Id.* ¶ 25.) Anderson, who served as the Global Head of Partner success and as Plaintiff's boss, began sexually harassing Plaintiff upon her arrival to Immutable. (*Id.* ¶ 24.) On September 29, 2022, Plaintiff met Anderson in person for the first time in San Francisco, where they had traveled for work. (*Id.* ¶ 26.) Anderson abruptly launched into a graphic discussion about sex, telling Plaintiff of her sexual desires, namely that she liked being choked, bound, and disliked anal intercourse. (*Id.* ¶ 27.) Anderson also described her interest in sleeping with multiple people at the same time, that she kept a "bucket list" of her "sexual targets," that she goes to parties to meet people for sex, and that she was in an open marriage and that her husband would have sex with other women. (*Id.* ¶ 28.) Anderson started her desire to sleep with more women and "keep exploring" sexually, which Plaintiff viewed as an "obvious effort" to lure her into a sexual encounter. (*Id.* ¶ 29.) Anderson described a sexual encounter she had with the founder of one of Immutable's main customers ("the Client") and asked Plaintiff for advice on the encounter. (*Id.* ¶ 30.) Plaintiff did not welcome the conversation but did not want to displease her direct manager as it was her first week. (*Id.* ¶ 31.) Plaintiff attempted to deflect the discussion, stating that it was up to Anderson for how she proceeded and to consider her children. (*Id.*)

The following day, on September 30, 2022, Anderson asked Plaintiff if she could borrow "going out clothes," to which Plaintiff agreed (*Id.* ¶ 32.). At the end of that day, Anderson insisted on returning to Plaintiff's hotel to return the borrowed clothes. (*Id.* ¶ 33.) In an effort to avoid further sexual overtures, Plaintiff insisted Anderson return the clothes the following day, but Anderson refused. (*Id.* ¶ 34.) Upon returning to Plaintiff's hotel room, Anderson took off the borrowed clothes in front of Plaintiff until she was wearing only a bra and underwear. (*Id.* ¶ 35.) Plaintiff asserts that Anderson "clearly expect[ed] the two would have sex." (*Id.*) Plaintiff feared

retaliation and conflict with Anderson, so she excused herself to the bathroom and called a friend, asking them to go to her hotel room. (*Id.* ¶ 26.) After exiting the bathroom, Anderson proceeded to describe to Plaintiff that she intended to have an extramarital affair. (*Id.* ¶ 37.) Anderson also touched her breasts and asked Plaintiff whether she thought Anderson should get "a boob job." (*Id.* ¶ 38.) Wanting to avoid conflict, Plaintiff stated that the surgery was not necessary, but that it was ultimately Anderson's choice. (*Id.* ¶ 38.)

On October 3, 2022, while on a business flight to Los Angeles, California, Anderson again brought up her sexual relationship with the Client. (*Id.* ¶ 42.) Anderson subsequently brought up her sexual encounters once more in March 2023, while Anderson and Plaintiff were in Australia for work, describing to Plaintiff an encounter she had with a female co-worker late at night. (*Id.* ¶ 45.) At that point, Anderson also made a series of sexual comments about their colleagues, describing and opining on their sexualities. (*Id.* ¶ 46.) Afterwards, Anderson "turned her sexual focus" to Plaintiff; Anderson expressed her desire to "date more women" and her disdain for anal sex. (*Id.* ¶ 48.) For the rest of their time in Australia, Plaintiff tried to distance herself from Anderson. (*Id.* ¶ 49.)

That same month Anderson advised Plaintiff she would be leaving Immutable in April 2023. (*Id.* ¶ 50.) On April 5, 2023, Plaintiff told Anderson, who had yet to leave Immutable, that she was pregnant and that the pregnancy was "high-risk." (*Id.* ¶ 52.) Anderson then questioned Plaintiff as to whether she could "do this job" pregnant. (*Id.* ¶ 53.) Plaintiff responded in the affirmative. (*Id.* ¶ 54.) Anderson was skeptical of Plaintiff's capabilities due to Plaintiff's job being "global[ly] intense." (*Id.* ¶ 55.) Plaintiff stressed that she could do her job while pregnant. (*Id.* ¶ 56.) Anderson still questioned whether Plaintiff was "motivated to be in this role." (*Id.* ¶ 57.) That same day, Anderson gave Plaintiff a false, negative performance review. (*Id.* ¶ 58.) Plaintiff did

not receive any other negative feedback during her tenure at Immutable. (*Id.*) Conversely, Plaintiff only received positive feedback during her time at Immutable, with another manager praising Plaintiff's work on a "critical project." (*Id.* ¶ 59.)

On April 21, 2023, Plaintiff complained that she was subject to discrimination. (*Id.* ¶ 60.) She specifically complained to Robert Knight ("Knight"), Global Human Resources Business Partner, about the comments Anderson made and the review Anderson gave Plaintiff after Plaintiff announced she was pregnant. (*Id.* ¶ 61.) Knight acknowledged that Anderson, on previous occasions, behaved inappropriately. (*Id.* ¶ 63.) That following week, Amalraj "became concerned" because Immutable executives "raised concerns" about Plaintiff; Amalraj stated she did not know what the concerns were because she found Plaintiff to be "high caliber talent" who deserved "only positive feedback." (*Id.* ¶¶ 63-64.)

Less than a month after disclosing her pregnancy status to Anderson and merely ten days after raising concerns about discrimination, Plaintiff was fired. (*Id.* ¶ 65.) Jason Suen ("Suen"), Chief Commercial Officer, and Katherine Rau ("Rau"), Chief People Officer, did not provide a "substantive reason" for the dismissal. (*Id.* ¶ 66.) Instead, they only stated that Plaintiff was an at-will employee and dismissal was the "best course of action." (*Id.* ¶ 67.) During the conversation, Rau routinely referred to Plaintiff's pregnancy as her "situation." (*Id.* ¶ 68.)

Defendants' internal documents "made clear" that Plaintiff was not terminated for any "lawful purpose." (*Id.* ¶ 69.) Rather, Plaintiff's Employee Separation Form ("ESF"), which Lightsource provided, explained that she was not dismissed for "Unacceptable Performance," "Violation of Company Policy/Process/Procedure" or "Excessive unexcused absences." (*Id.* ¶ 70.) Plaintiff asserts that the ESF acknowledged Plaintiff did not "receive any written warning prior to

termination" and that her dismissal was not the result of any "Layoff" such as "reorganization, closing, or lack of work." (*Id.* ¶ 71.)

On September 23, 2023, prior to commencing the instant action, Plaintiff filed a charge of discrimination before to U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violations of Tittle VII. (*Id.* ¶ 8.) The EEOC issued a right to sue notice on December 20, 2023. (*Id.*) Plaintiff similarly filed a discrimination charge with the California Civil Rights Department on October 2, 2023, and received a right to sue notice the same day. (*Id.* ¶ 9.)

Based on the foregoing, Plaintiff brings claims alleging violations of Title VII, NYSHRL, and the FEHA.

## PROCEDURAL HISTORY

On September 6, 2023, Plaintiff commenced this action against Defendants. (ECF No. 1). Plaintiff subsequently filed an amended complaint (the "Complaint" or "Am. Compl.") (ECF No. 38). Immutable filed a motion to dismiss and its memorandum of law in support. (the "Immutable Motion" or "Immutable Mot.") (ECF Nos. 43 and 44). Lightsource filed a motion to dismiss and its memorandum of law in support (the "Lightsource Motion" or "Lightsource Mot.") (ECF Nos. 48 and 49). Plaintiff filed an opposition to Immutable's motion ("Immutable Opposition" or "Immutable Opp.") (ECF No. 46) and filed an opposition to Lightsource's motion ("Lightsource Opposition" or "Lightsource Opp.) (ECF No. 50). Immutable filed a reply in support of its motion ("Immutable Reply") (ECF No. 47), and Lightsource filed a reply in support of its motion ("Lightsource Reply") (ECF No. 51).

**LEGAL STANDARD**

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Rule 12(f)

Rule 12(f) provides in relevant part that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is to create a clear mechanism for the court to save time and

expense by eliminating certain items from pleadings when the items clearly lack merit, and also for the court to dispose of irrelevant allegations. *See Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) ("The function of the motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case."). In considering whether a claim is immaterial for the purposes of a motion to strike, "[a]n allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012). "Thus, to prevail on a Rule 12(f) motion to strike, the movant must show '(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant.'" *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)).

## DISCUSSION

Plaintiff brings claims pursuant to Title VII, FEHA, and NYSHRL. The Court addresses them in turn.

### A. Whether Lightsource is an employer for the purposes of Title VII, FEHA and NYSHRL

Title VII prohibits employers from engaging in discriminatory or retaliatory practices. The "existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. New York State Educ. Dept.,* 460 F. 3d 361, 370 (2d Cir. 2006). To "hold an employer liable for unlawful employment practices under Title VII, an employer-employee relationship must have existed between the parties at the time of the alleged unlawful conduct." *Felder v. United States*

*Tennis Ass'n Inc.*, No. 17 CIV. 5045 (ER), 2018 WL 5621484, at *4 (S.D.N.Y. Oct. 30, 2018). Similarly, the FEHA applies to employers, defined by "the control exercised by the employer over the employee's performance of employment duties." *Patterson v. Domino's Pizza, LLC*, 333 P.3d 723, 740 (2014) (internal citations omitted). The FEHA's definition of employer necessitates "a comprehensive and immediate level of 'day-to-day' authority' over the employee. *Vernon v. State*, 10 Cal.Rptr.3d 121, 132 (2004). Finally, the NYSHRL, while lacking a specific definition as to employer, considers "four elements to be considered in determining whether a defendant may be sued as an employer: (1) the court must consider whether the proposed employer had the power to select or engage the employee; (2) paid the employee's wages or salary; (3) had the power of dismissal; and (4) had the power to control the employee's conduct." *Burhans v. The State of New York*, No. 152906/14, 2015 WL 195095, *5 (N.Y. Sup. Ct. Jan. 07, 2015).

The Complaint states that Lightsource "is an employer services company incorporated in Delaware and headquartered in Florida" and that it "me[ets] the definition of an 'employer' [under] applicable law." (Am. Compl. ¶ 13.) The Complaint alleges that on September 26, 2022, Plaintiff began working for Immutable and Lightsource as a Director of Partner Success. (*Id.* ¶ 1.) Further, the Employment Agreement stated "[o]n behalf of Lightsource HR Global II LLC, we would like to extend this offer of employment." (*Id.* ¶ 20.) Plaintiff also stated that pursuant to the Employment Agreement Plaintiff was required to notify "both Immutable and Lightsource of any sick days, paid time off days or unpaid leaves of absence." (*Id.* ¶ 22.) The Employment Agreement was "executed by both Mazzuchelli and Shawn Stutz (Division President of Lightsource)." (*Id.* ¶ 23.) Lightsource also provided the Employee Separation Form, explaining the reasons underlying Plaintiff's termination. (*Id.* ¶ 70.)

Such allegations do evidence that Lightsource was involved with Plaintiff's hiring screening process, to some extent. At the same time, the Complaint does acknowledge that Lightsource is "an employer services company." (*Id*. ¶ 13.) The Complaint does not offer further information as to what exactly being an employer services company entailed or what an employer services company constitutes. The Complaint further acknowledges that Plaintiff's position was a "role at Immutable." (*Id.* ¶ 18.) Additionally, as currently written, the Complaint does not allege whether Lightsource was responsible for Plaintiff's renumeration, the assignment and control of day-to-day responsibilities, and whether to terminate or dismiss Plaintiff. Therefore, for the purposes of Title VII, NYSHRL and FEHA standards discussed *supra*, these allegations are insufficient to plausibly support a finding that Lightsource had an employer-employee relationship with the Plaintiff. Accordingly, the Court grants Defendant Lightsource's motion to dismiss and Plaintiff's claims against Lightsource are dismissed without prejudice.

### B.  FEHA Discrimination and Retaliation Claims

#### a.  Discrimination Claim and Retaliation Claims

To state a claim for discrimination under the FEHA, a Plaintiff must demonstrate: "'(1) he was a member of a protected class, (2) he . . . was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, . . . and some other circumstances suggests discriminatory motive." *Cowan v. Baydelta Mar., Inc.*, 2011 WL 1324463, at *4 (N.D. Cal. Apr. 6, 2011) (quoting *Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 355 (2000)). To state a claim for retaliation under the FEHA, a plaintiff must show that "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action*." Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1042 (2005).

For the FEHA to apply to a non-California resident, the tortious conduct must be within California. *See Gonsalves v. Infosys Techs., Ltd.*, 2010 WL 11578735, at *4 (N.D. Cal. Jan. 6, 2010); *see also Dodd-Owens v. Kyphon, Inc.,* 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007); *Campbell v. Arco Marine, Inc.,* 42 Cal. App. 4th 1850, 1860 (1996) (holding that the FEHA "should not be construed to apply to non-residents employed outside the state when the tortious conduct did not occur in California").

Plaintiff's employment discrimination and retaliation claims under the FEHA fail to meet this territoriality standard; as discussed *supra*, these claims arose from alleged discrimination that occurred in New York. While Plaintiff alleges that she traveled to California for business purposes, she was neither terminated nor retaliated against in California and her place of employment was not in California. (Am. Compl. ¶¶ 52-58, 65.) Therefore, Plaintiff, as a non-California resident employed by a non-California employer, cannot bring FEHA claims stemming from action taken in New York. Accordingly, Plaintiff's FEHA employment discrimination and retaliation claims are dismissed without prejudice.

### b. **Sexual Harassment Claim**

Courts have recognized two-forms of sex-based workplace harassment for the purposes of the FEHA: quid pro quo and hostile or abusive environment. *Sheffield v. Los Angeles Cnty. Dep't of Soc. Servs.*, 134 Cal. Rptr. 2d 492, 498 (2003). To bring a claim for sex-based hostile or abusive environment, a plaintiff must show: "(1) she was subjected to verbal or physical contact, (2) the conduct was unwelcome, and (3) the abusive conduct was sufficiently severe or pervasive so as to alter the conditions of her employment and thus creating an abusive working environment." *Id*. The question of whether there is an abusive or hostile work environment is determined from the totality of the circumstances. *Fisher v. San Pedro Peninsula Hosp*., 214 Cal. App. 3d 590, 609 (Ct.

App. 1989). The plaintiff must "prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended." *Id*. at 609-610. The "factors can be considered in evaluating the totality of the circumstances are (1) the nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexual harassing conduct occurred." *Id*. at 610.

In light of such standards, the Court finds that, as currently written, the Complaint does not plausibly allege a claim for sexual harassment under the FEHA. Plaintiff is able to satisfy the first two prongs of the analysis: she was subject to verbal, sexual conduct (*see* Am. Compl. ¶¶ 27-31, 38, 45-46) (first prong), and the conduct was not welcomed (*see* Am. Compl. ¶¶ 31, 39, 44, 49) (second prong). Where Plaintiff's complaint falls short is the third prong; she is unable to demonstrate that the conduct was sufficiently severe so as to create an abusive or hostile working environment. Plaintiff does not allege with specificity that Anderson's conduct "would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee." *Fisher*, 214 Cal. App. 3d 590, 610. Additionally, the totality of the circumstances does not favor a finding of an abusive or hostile work environment. Plaintiff only alleges that Anderson discussed, albeit in great detail, her sex life and the sex lives of her colleagues in Plaintiff's hotel room across two nights. Such comments, while undoubtedly inappropriate and reasonably made Plaintiff uncomfortable, do not give rise to a severity of the kind needed to demonstrate an abusive or hostile work environment for a claim of sexual harassment. Moreover, the instances of harassment that occurred in California were

limited to two instances across two days: on September 29, 2022, and September 30, 2022. Importantly, Plaintiff's complaint does not allege that her work performance was interfered with and that her psychological well-being was seriously affected. *Fisher*, 214 Cal. App. 3d 590, 610.

It might be that Plaintiff can amend the Complaint so as to demonstrate harassing conduct and the consequences of such conduct that would give way to a FEHA sexual harassment claim, but as currently written, the Complaint does not plausibly allege such a claim. Accordingly, the Court grants Defendant Immutable's motion to dismiss Plaintiff's FEHA sexual harassment claim without prejudice.

### C. Title VII and NYSHRL Retaliation Claims

To state a claim for retaliation under Title VII, a plaintiff must generally show that "(1) he engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) his employer was aware of that activity; (3) he suffered a materially adverse employment action; and (4) there was a causal connection between protected activity and the adverse employment action." *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014). The requirements to establish a *prima facie* case are "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). The burden plaintiff bears is not "onerous." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The NYSHRL "similarly makes it an unlawful for an employer to retaliate or discriminate against an employee because she 'has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under this article.'" *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020). Title VII and NYSHRL retaliation claims are governed by the same standards. *Id*.

Protected activity "includes participation in a Title VII investigation and proceedings as well as opposition to an employment practice that is unlawful . . . [i]nformal as well as formal complaints to management, constitute protected oppositional activity." *Robinson v. Time Warner, Inc.*, 92 F. Supp. 2d 318, 322 (S.D.N.Y. 2000). Moreover, there is an inference of discrimination when a protected activity is closely followed by an adverse action. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995); *see also Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986).

Here, Plaintiff successfully states Title VII and NYSHRL retaliation claims. Plaintiff complained to her employer regarding discriminatory treatment she experienced on the basis of her pregnancy (prong 1); Plaintiff's employer was aware of this activity as her protected activity was directly complaining to her employer (prong 2); Plaintiff suffered adverse action in the form of termination (prong 3); and Plaintiff's protesting Anderson's discriminatory conduct was causally connected to the adverse action given the protected activity was closely followed by the adverse employment  action (prong 4); *see Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000) (noting that causation requirement of retaliation claims can be satisfied where "protected activity was followed closely by discriminatory treatment"). Accordingly, Defendant Immutable's motion to dismiss is denied as to Plaintiff's Title VII and NYSHRL retaliation claims.

### D.  Title VII and NYSHRL Discrimination Claims

To state a claim for discrimination under Title VII, a plaintiff must demonstrate that "(1) he is within a protected group; (2) he was qualified for the job at issue; (3) he was subject to an adverse employment action; and (4) this action occurred under circumstances giving rise to an inference of discrimination." *Dickens v. Hudson Sheraton Corp*., LLC, 167 F. Supp. 3d 499, 518 (S.D.N.Y. 2016), aff'd, 689 F. App'x 670 (2d Cir. 2017). To state a claim for discrimination under

the NYSHRL, a plaintiff must allege "merely 'that she has been treated less well than other employees because of her gender.'" *Luzunaris v. Baly Cleaning Servs.*, No. 23-CV-11137 (GHW) (RFT), 2024 WL 3926S708 (S.D.N.Y. July 29, 2024), report and recommendation adopted sub nom., *Luzunaris v. Baly Cleaning Servs. Inc.*, No. 1:23-CV-11137-GHW-RFT, 2024 WL 3925919 (S.D.N.Y. Aug. 22, 2024) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). The "four elements of a prima facie case for employment discrimination are: (i) that Plaintiff is a member of a protected class; (ii) that Plaintiff was qualified for her position; (iii) that Plaintiff suffered an adverse employment action; and (iv) that Defendants acted with discriminatory intent." *Id.* at *6. The "standards for establishing unlawful discrimination under section 296 of the Human Rights Law are the same as those governing title VII*." Mittl v. New York State Div. of Hum. Rts.*, 794 N.E.2d 660, 663 (2003).

Plaintiff is able to satisfy the elements needed to state an employment discrimination claim under Title VII and NYSHRL: Plaintiff is female and pregnant, thus within a protected group (*see Malena v. Victoria's Secret Direct*, LLC*, 886 F. Supp. 2d 349, 357 (S.D.N.Y. 2012) (noting that Plaintiff who was female and pregnant was thereby a member of a protected class); *see also Flores v. Buy Buy Baby, Inc.*, 118 F. Supp. 2d 425, 430 (S.D.N.Y. 2000) (same)) (prong 1); Plaintiff was qualified for the job at issue (*see* Am. Compl. ¶¶ 14-18, 64, 70-71) (prong 2); Plaintiff experienced an adverse employment action in being terminated (*see* Am. Compl. ¶ 65) (prong 3); and the circumstances surrounding the adverse action evidence a discriminatory intent (prong 4). Specifically, Plaintiff was fired "less than a month after disclosing her pregnancy to Anderson and only ten days after complaining about discrimination." (Am. Compl. ¶ 65.) Courts have held that such close proximity between disclosure of a pregnancy and termination gives rise to an inference of discriminatory circumstances. *See Krause v. Lancer & Loader Grp., LLC,* 965 N.Y.S.2d 312,

317 (Sup. Ct. 2013) (inference of discrimination raised where plaintiff was fired shortly after informing supervisor she was pregnant). Additionally, that Anderson made disparaging comments questioning whether Plaintiff could effectuate her responsibilities while pregnant and then that same day gave Plaintiff a negative performance review (the only time Plaintiff received such a review) further evidences that the adverse action was undergirded by discriminatory intent. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 359 (S.D.N.Y. 2012) (holding that bosses' expressed concern about plaintiff's pregnancy and hormones gave rise to inference of discrimination surrounding plaintiff's termination). Accordingly, the Court finds that Plaintiff has stated plausible Title VII and NYSHRL discrimination claims and denies Defendant Immutable's motion to dismiss such claims.

### E. NYSHRL Sexual Harassment Claim

For a plaintiff to bring a claim under the NYSHRL, the conduct at issue must fall within the statute's territorial scope. "In order for discrimination to occur within New York for the purposes of the NYSHRL, it must be shown that the 'unlawful discriminatory practice originated within New York state, that a discriminatory practice affected the 'terms, conditions, or privileges of [plaintiff's] employment' within New York." *Meyers v. Medco Health Sols., Inc.*, 2012 WL 4747173, at *4 (S.D.N.Y. Oct. 4, 2012) (quoting *Sherwood v. Olin Corp.,* 772 F.Supp. 1418, 1426 (S.D.N.Y.1991)); *see also Benardo v. Am. Idol Prods., Inc.*, 2011 WL 2565489, at *5 (S.D.N.Y. June 21, 2011) (holding that conduct occurring in California by a foreign corporation is not within the scope of the NYSHRL); *Smith v. AECOM Tishman*, 2023 WL 2734430, at *9 (S.D.N.Y. Mar. 30, 2023) (noting that the NYSHRL does not apply to conduct outside of New York State).

Plaintiff's NYSHRL sexual harassment claim fails as it does not satisfy the NYSHRL's territoriality requirement. Based on the allegations of the Complaint, the instances of sexual

harassment occurred in California (*see* Am. Compl. ¶¶ 26, 32), on a flight to Los Angeles (*see* Am. Compl. ¶ 42), and in Australia (*see* Am. Compl. ¶ 45), not New York. Therefore, Plaintiff has failed to plausibly allege a NYSHRL sexual harassment claim, and the Court grants Defendant Immutable's motion to dismiss such claim without prejudice.

### F. Title VII Sexual Harassment Claim

A sexual harassment claim is actionable under Title VII "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Middleton v. Metro. Coll. of New York*, 545 F. Supp. 2d 369, 374 (S.D.N.Y. 2008) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764-765 (2d Cir.1998)). Whether an environment is hostile or abusive "depends on the totality of the circumstances, and courts must consider a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. Important context is that "[a]s a general matter, 'isolated remarks or occasional episodes of harassment' are not actionable, but rather, 'the incidents of harassment must occur in concert or within a regularity that can be reasonably termed pervasive.'" *Id*.

Plaintiff's Title VII's sexual harassment claim fails to meet the standard needed to survive a motion to dismiss. Considering the totality of the circumstances, the Court finds that the sexual harassment Anderson subjected Plaintiff to did not alter Plaintiff's condition of employment and did not create an abusive working environment for reasons the Court dismissed Plaintiff's FEHA sexual harassment claim discussed *supra*. Plaintiff avers four separate, discrete instances of sexual harassment that, taken together, do not allow for the harassment to be "termed pervasive."

*Middleton*, 545 F. Supp. 2d 369, 374. Plaintiff pleads that she was uncomfortable with the "graphic sexual discussions" and with Anderson's "sexual overtures" (*see* Am. Compl. ¶¶ 31, 34), but the Complaint, as currently written, does not plead facts that would demonstrate that Anderson's conduct was threatening or humiliating. *Middleton*, 545 F. Supp. 2d 369, 374. Moreover, while Plaintiff does allege she felt some relief at the news that Anderson would be leaving Immutable, Plaintiff does not substantively plead that Anderson's conduct unreasonably interfered with Plaintiff's work. (Am. Compl. ¶ 50.) It might be that Plaintiff can amend her complaint so as to demonstrate that Anderson's conduct could be qualified as severe enough for the purposes of the Title VII sexual harassment analysis, but as currently written, the Complaint does not plausibly allege a Title VII sexual harassment claim. Accordingly, the Court grants Defendant Immutable's motion to dismiss such claim without prejudice.

### G.  Motion to Strike

Under the Federal Rules of Civil Procedure, a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motion to strikes are generally disfavored but may be stricken if they "have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002).

Here, Immutable argues that "[t]he bulk of the First Amended Complaint's factual allegations are inflammatory rhetoric about purported conversations concerning widespread sexually nefarious behavior by and among Immutable executives and a client." (Immutable Mot. p. 13.) While these factual allegations may provoke strong reactions, Plaintiff is pleading that she is a victim of sexual harassment and discrimination, inherently provocative allegations. Plaintiff must be permitted to plead her case, and thus it would be improper to strike the factual allegations

that undergird her Complaint and to strike the incidents she allegedly experienced that serve as the basis of her claims. *Anderson*, 850 F. Supp. 2d 392, 416.  It is left to the Court's discretion as to whether it should grant a Rule 12(f) motion. *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991). Accordingly, the Court, in its discretion, declines to grant Immutable's motion to strike portions of Plaintiff's First Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Lightsource Global's motion to dismiss as to each claim asserted against it without prejudice. As to Defendant Immutable PTY. LTD's motion to dismiss, the Courts GRANTS the motion without prejudice as to Plaintiff's FEHA claims and Plaintiff's Title VII and NYSHRL sexual harassment claims. The Court DENIES Defendant Immutable PTY. LTD's motion to dismiss as to Plaintiff's Title VII and NYSHRL retaliation claims and DENIES as to Plaintiff's Title VII and NYSHRL discrimination claims. Lastly, the Court DENIES Defendant Immutable PTY. LTD's motion to strike portions of the First Amended Complaint.

Plaintiff is granted leave to file a Second Amended Complaint by December 20, 2024. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims that she wishes to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, the Defendants are directed to answer or otherwise respond by January 17, 2025, and the parties are directed to confer, complete and file a Case Management Plan and Scheduling Order (blank form attached) by February 17, 2025. If Plaintiff fails to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice. If no Second Amended Complaint is timely filed, Defendant Immutable PTY. LTD is

directed to file an answer on or before January 17, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order February 17, 2025.

     The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 43 and 44.

Dated:   November 18, 2024                     SO ORDERED:
         White Plains, New York

_____
                                  NELSON S. ROMÁN
                           United States District Judge

UNITED STATES DISTRICT COURT                    Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x


                                    **CIVIL CASE DISCOVERY PLAN**

                    Plaintiff(s),    **AND SCHEDULING ORDER**

    - against -



                    Defendant(s).    _____ CV _____ (NSR)


-------------------------------------------------------------x


 This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel,
pursuant to Fed. R. Civ. P. 16 and 26(f):


1.    All parties [consent] [do not consent] to conducting all further proceedings before a
      Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The
      parties are free to withhold consent without adverse substantive consequences.  (If all
      parties consent, the remaining paragraphs of this form need not be completed.)


2.    This case [is] [is not] to be tried to a jury.


3.    Joinder of additional parties must be accomplished by _____.


4.    Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

_____

_____

Nelson S. Román, U.S. District Judge